WILLIAM R. HURD *vs.* EASTERN MASSACHUSETTS STREET RAILWAY COMPANY.

Essex.   November 9, 1925. — January 5, 1926.

Present: RUGG. C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence*, Contributory, In use of highway, Motor vehicle, Street railway.

One, driving an automobile from a private driveway into a public street where there was a street railway track, stopped the automobile, "because it was a dangerous driveway," when it was twenty inches from the nearest rail of the track, "a point which he thought was a reasonably

safe distance from the track and safe," released the clutch, put on the emergency brake, put the gears in neutral, but did not shut down the engine, and, while thus standing, the automobile was struck by a one-man street railway car approaching on a "wavy" track at the rate of thirty-five miles an hour, too rapidly to allow the driver of the automobile to back his automobile although he saw the street car swaying and had in mind that perhaps it was going to strike the automobile. *Held*, that the driver of the automobile, although he did not know that the track was "wavy," must as a matter of law be found to be guilty of contributory negligence and could not maintain an action against the street railway company for damages to the automobile.

TORT for damages to an automobile resulting from its being run into by a street car of the defendant. Writ dated October 19, 1921.

In the Superior Court, the action was tried by *Lawton*, J. Material evidence is described in the opinion. The defendant rested at the close of the evidence for the plaintiff and moved that a verdict be entered in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $368.55. The defendant alleged exceptions.

*J. J. Ronan*, for the defendant.

*G. C. Richards*, for the plaintiff.

PIERCE, J. At the close of the evidence introduced at the trial by the plaintiff bearing upon the question of liability, the defendant rested its case and duly filed a motion requesting the trial judge to direct a verdict for the defendant. The case comes before this court on exceptions duly saved to the refusal of the judge so to do.

The bill of exceptions contains all the material evidence, and, in substance, discloses that a "one-man passenger car" of the defendant at 9:30 P.M., August 31, 1921, on a dark and perfectly clear night, collided with a Cole touring car of the plaintiff, each of the headlights of which had a good lens and reflector and was on full light. The accident occurred at or near the southerly entrance to an estate on Cabot Street in North Beverly. The estate lies on the easterly side of the highway running from Beverly to Portland. It has a frontage of one thousand feet, with a fence in front about the height of a man's head. Between the fence at the driveway, on either side, and the nearest car rail the distance is fourteen

feet.  At the driveway there is a sidewalk six feet wide, then a grass plot, in width about five feet, with old, large maple trees above and below the driveway.  A man standing on the inside of the sidewalk, by the fence at the driveway, can see up the street in the direction the car came a little way beyond the first tree, which is distant one hundred and sixty-two feet; the second, third and fourth trees are one hundred and eighty-eight feet, two hundred and twenty-five and one-half feet, and two hundred and sixty-one feet away, respectively.  The street railway tracks run in nearly a straight line for about a quarter of a mile to the north of the driveway, with an unobstructed view of the tracks for that distance from a point a foot or two on the sidewalk; "if you were out a foot or two on the sidewalk you could see as far as the eyesight would let you, because there was not the slightest obstruction."

Immediately before the collision the plaintiff drove his car, from a house which was back from the street three hundred feet, along a driveway very slowly, hardly moving at all for the last twenty-five feet, until it stopped "about twenty inches from the nearest rail, an inch one way or the other, within two feet."  He testified, in substance, that he stopped the automobile "when he reached a point which he thought was a reasonably safe distance from the track and safe"; that he did not stop his automobile because of the coming of the electric car; that the electric car had nothing to do with the stopping of his automobile at the time he stopped; that he was going to stop as long as necessary; that before seeing any electric car he stopped his automobile, released the clutch, put on the emergency brake, put the gears in neutral, but did not shut down the engine, there was no need of that; that he thought there was need of putting on the emergency brake; that he could have held the automobile by simply pressing on the foot brake; that he made up his mind to stop far enough from the car track so that the electric car could get by without a collision; that he knew there was swaying to all electric cars; that after the accident he looked at the tracks and saw that they were wavy, but he did not know that before the collision; that when he

stopped he considered he was far enough away; that he knew if he stopped a foot nearer to the tracks it would be dangerous; that he did not consider it dangerous to stop where he did stop; "that he was twenty inches or two feet away, something like that, far enough to clear; that he stopped because it was a dangerous driveway."

He further testified, in substance, that before he stopped he looked toward Beverly to the left, and then after he stopped he saw "that there was something to his right which prevented him from going out onto the street and that was the lights coming down to the right of him; those lights were three or four hundred feet away"; that just after he stopped his automobile he noticed the electric car coming three or four hundred feet away, that the car was travelling about thirty-five miles an hour; that he did not have time "to back up"; that he did not attempt to shift gears when a backing of six inches or going ahead a foot, he being on a slant toward Beverly, would have averted the accident, although, as the car was coming down swaying, he had in mind that maybe it was going to strike the automobile, which was stationary when the electric car reached it. By the collision which resulted when the electric car passed the automobile, the automobile was driven forward slightly and five or six feet to the side, the right front wheel was torn off, and other damage suffered to the automobile.

Upon the reported evidence the question for decision is upon whom should fall the loss which admittedly resulted from the misjudgment of the plaintiff as to what point in relation to the car tracks he could safely stop the automobile, and the driving of the electric car at a high rate of speed, swaying and swerving over wavy tracks.

On the testimony of the plaintiff it was negligent to stop the automobile at a place in relation to the tracks where it was certain to be hit by a passing electric car, if that car for any reason should sway out a few inches further than the plaintiff supposed it might do. The chance of harm should have been eliminated by him and the harm resulting from his want of foresight cannot justly be cast upon the defendant. The plaintiff as a matter of law was guilty of con-

tributory negligence and a verdict should have been entered for the defendant. *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392, and cases collected at page 396. *Fitzpatrick* v. *Boston Elevated Railway*, 249 Mass. 140, 143.

*Exceptions sustained.*
*Judgment for the defendant.*