GEORGE GECHIJIAN *vs.* RICHMOND INSURANCE COMPANY.

SAME *vs.* THE FULTON FIRE INSURANCE COMPANY.

SAME *vs.* FIREMEN'S INSURANCE COMPANY.

SAME *vs.* NORTHWESTERN NATIONAL INSURANCE COMPANY.

SAME *vs.* CHICAGO FIRE & MARINE INSURANCE COMPANY.

SAME *vs.* RHODE ISLAND INSURANCE COMPANY.

SAME *vs.* THE PENNSYLVANIA FIRE INSURANCE COMPANY.

SAME *vs.* SOUTHERN FIRE INSURANCE COMPANY.

SAME *vs.* OHIO FARMERS INSURANCE COMPANY.

SAME *vs.* NEW ENGLAND FIRE INSURANCE COMPANY.

Suffolk.    May 13, 1937. — November 30, 1937.

Present: RUGG, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Insurance*, Fire: attempt by insured to defraud insurer, waiver of condition. *Waiver. Words*, "Attempt to defraud."

A finding that one, insured under a fire insurance policy, in an informal statement to the insurer after a fire "knowingly exaggerated the sound value of the property" destroyed "in order to be in a more advantageous position to be paid for the real loss suffered," required a conclusion that he had attempted to defraud the insurer and that the policy by its terms thereby became void, even though he did not intend ultimately to obtain more than fair compensation for his actual loss.

Acceptance by the insurer after a fire of a premium already due upon a policy of fire insurance did not waive a defence that the policy under its provisions had become void because the insured had attempted to defraud the insurer, although at the time it accepted the premium the insurer knew of the attempted fraud.

TEN ACTIONS OF CONTRACT. Writs in the Superior Court dated October 17, 1931.

The actions were heard together by *Brogna*, J., without a jury. There were findings for the plaintiff. The defendants alleged exceptions.

*G. B. Rowell*, (*A. R. Berge* with him,) for the defendants.
*W. J. Killion*, (*F. J. Carney* with him,) for the plaintiff.

QUA, J.   The policies of fire insurance upon which these actions are brought covered personal property in the plaintiff's photographic studio.   All of the policies are in the Massachusetts standard form; all are dated either December 3 or December 4, 1930; and all contain the following provision: "This policy shall be VOID . . . if the insured shall make any attempt to defraud the Company either before or after the loss."

On December 23, 1930, a destructive fire occurred in the studio.   On January 7, 1931, the plaintiff "filed" with the companies' adjusters an unsigned typewritten list entitled, "Fire Loss of George Gechijian . . ." and containing one hundred eighty-three items of personal property.   Opposite each item was a figure, presumably representing dollars, all of the figures being arranged in a column under the heading, "Value."   The total of these figures was $27,081. Under a heading, "Loss," no figures were inserted.   No jurat was attached.   This schedule was "filed" early in the negotiations for adjustment of the loss.   It was not, however, a part of the formal proofs of loss required by the policies.   The plaintiff testified that the figures given in this schedule represented replacement values and that the real values were to be determined later.   The plaintiff and the companies did agree later that the sound value of the property was $15,000 and that the loss was $13,000.   The judge found that in the schedule the plaintiff "knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered, but not with the intent to defraud the insurers." The principal question in the case is whether these findings are mutually inconsistent so that they cannot stand together. Stated differently, the question is whether the plaintiff in furnishing to the insurers the schedule wherein he "knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered" did as matter of law attempt to defraud the companies after the loss in violation of the provision of the policies hereinbefore quoted.

In our opinion a design on the part of the insured to gain

a position of advantage in the settlement of the loss through false representations is a fraudulent design and the making of such representations knowingly for that purpose is an "attempt to defraud" within the meaning of those words as used in the policy, even though the insured may not have expected or intended ultimately to obtain more than compensation for the actual loss. By such action the insured intends to influence the conduct of the insurer to the advantage of the insured. The policy does not contemplate that after a loss the insured and the insurer shall occupy the positions of vendor and vendee, free to haggle over the price of the property destroyed without regard to its true value. Rather it contemplates that they shall coöperate in complete honesty and fairness to ascertain the essential facts — the facts of value and of loss — in accord with the truth, and when those facts have been ascertained the rights of the parties are fixed by the policy itself, the insurer being bound, subject to the limitations of the policy, to pay the loss without quibbling, and the insured having no right to demand more. The clause hereinbefore quoted is inserted for the protection of the insurer, who is often unable to obtain reliable independent information as to the extent of loss. There is nothing in it or in the tenor of the standard form of fire policy taken as a whole (G. L. [Ter. Ed.] c. 175, § 99) which gives countenance to a construction that would permit the insured to play fast and loose with the truth as long as he did not intend ultimately to obtain a sum which in the nature of things could hardly be anything other than his own estimate of the amount of his loss. Intent to defraud is not to be presumed, and the trier of fact should make all reasonable allowance for lack of knowledge or sound judgment or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one's own interest, but when it is established, as it is here established by the finding of the judge, that the insured has knowingly made false statements, even in such a matter as value, for the purpose of influencing the adjustment of the loss, public policy demands that the contract be so construed as to discourage such conduct and to give full

protection to the insurer. Compare G. L. (Ter. Ed.) c. 266, § 111A. Under the terms of the policy it is immaterial that the false statements in the schedule were not a part of the formal sworn proofs of loss..

So far as we know this precise question has not arisen before in this Commonwealth. Cases in which there was no intent to deceive or defraud are not in point. See, for example, *Towne* v. *Springfield Fire & Marine Ins. Co.* 145 Mass. 582. The implications in *Little* v. *Phoenix Ins. Co.* 123 Mass. 380, at page 385, as far as they go, tend to support this decision, and there is nothing to the contrary in *Dolan* v. *Mutual Reserve Fund Life Association,* 173 Mass. 197, or in *De Guzzi* v. *Prudential Ins. Co.* 242 Mass. 538.

The case of *Sleeper* v. *New Hampshire Fire Ins. Co.* 56 N. H. 401, is almost on all fours with the case at bar. It was there found that the insured overstated his loss to induce the company to make a speedy settlement and to prevent controversy, but without any purpose to obtain a greater sum than the insured considered the company liable to pay. The court held that this was an attempt on the part of the insured "to deceive the insurers by a statement which he knew to be false, and done with the purpose of securing some advantage to himself at the expense of the defendants" (page 408), and that the insured could not recover on the policy. Other decisions, although not so closely in point, tend toward the same result. *Claflin* v. *Commonwealth Ins. Co.* 110 U. S. 81. *Dolloff* v. *Phoenix Ins. Co.* 82 Maine, 266. *Moreau* v. *Palatine Ins. Co.* 84 N. H. 422. *Virginia Fire & Marine Ins. Co.* v. *Vaughan,* 88 Va. 832, 840. *Fink* v. *La Crosse Mutual Fire Ins. Co.* 203 Wis. 350, 357. *Columbian Ins. Co.* v. *Modern Laundry, Inc.* 277 Fed. 355. *Globe & Rutgers Fire Ins. Co.* v. *Stallard,* 68 Fed. (2d) 237.

But the plaintiff argues in substance that the defendants have not been injured by the action of the trial judge, because the defendants waived their defence by accepting through brokers and agents payment of the premiums on the policies after the fire and after knowledge of the matters

upon which their defence is now based.   It is often stated
as a general rule that the acceptance of premiums with full
knowledge waives a previous breach of condition.   *Phoenix
Life Ins. Co.* v. *Raddin*, 120 U. S. 183, 196.   *Hanover
Fire Ins. Co.* v. *Dallavo*, 274 Fed. 258.   *New York Life
Ins. Co.* v. *Dumler*, 282 Fed. 969.   *Milkman* v. *United
Mutual Ins. Co.* 20 R. I. 10.   Cases collected in Couch on
Insurance, § 687a.   See *Hodsdon* v. *Guardian Life Ins. Co.*
97 Mass. 144;   *Rice* v. *New England Mutual Aid Society*,
146 Mass. 248.   Some of these cases also lay stress upon
retention by the company of premiums after knowledge of
the breach as constituting a waiver.   However, the cases
before us are distinguishable from most, if not all, of those
just cited in that here the policies actually took effect, and
the premiums in question became payable and were at least
partly earned before the breach of condition occurred, and
that nothing but the plaintiff's own attempt to defraud
deprived him of the full benefit of the payments and of the
policies.   Under these circumstances we think that neither
acceptance nor retention of the premiums is of itself alone
a waiver of the breach.   The defendants were entitled to
the premiums.   The plaintiff bargained for conditional
promises of the defendants, got what he bargained for, and
should pay the price.   See *Gutlon* v. *Marcus*, 165 Mass. 335,
336.   This result is consistent with if not required by the
decisions in *Parker* v. *Smith Charities*, 127 Mass. 499, 501,
*Elder* v. *Federal Ins. Co.* 213 Mass. 389, 391, and *Adler* v.
*Safeguard Ins. Co.* 288 Mass. 409, wherein we held under
comparable circumstances that the insured could not re-
cover from the company premiums paid.   There is ample
support for this view in the decisions of other courts.   *Bur-
ner's Administrator* v. *German-American Ins. Co.* 103 Ky.
370.   *Schimp* v. *Cedar Rapids Ins. Co.* 124 Ill. 354.   *Parsons,
Rich & Co.* v. *Lane*, 97 Minn. 98, 119.   *Northwestern Fire
& Marine Ins. Co.* v. *Connecticut Fire Ins. Co.* 105 Minn.
483, 490.   *A. M. Todd Co.* v. *Farmers' Mutual Fire-Ins. Co.*
137 Mich. 188, 194.   *Hanover Fire Ins. Co.* v. *Wood*, 209
Ala. 380, 383.   *Pearlstine* v. *Westchester Fire Ins. Co.* 70
S. C. 75.   *Medley* v. *German Alliance Ins. Co.* 55 W. Va.

342, 367. Williston on Contracts (Rev. Ed.) § 757, and cases cited.

For the purposes of the foregoing discussion we have assumed, but without deciding, that payments of premiums to the plaintiff's brokers were equivalent to payments to the defendants. See G. L. (Ter. Ed.) c. 175, § 169; *Ritson* v. *Atlas Assurance Co. Ltd.* 279 Mass. 385, 391; *Kyte* v. *Commercial Union Assurance Co.* 144 Mass. 43, 46.

If the defendants are ultimately found liable, interest will begin to run sixty days after the receipt by them of written notice of the fire. G. L. (Ter. Ed.) c. 175, § 102 (now amended by St. 1934, c. 110, § 1).

Questions based upon requests for rulings and questions of evidence, in so far as not already covered, may not arise at another trial and need not be discussed now.

*Exceptions sustained.*