GEORGE GECHIJIAN *vs.* RICHMOND INSURANCE COMPANY (and nine companion cases *).

Suffolk.     November 7, 1939. — January 31, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Insurance*, Fire: proof of loss, attempt by insured to defraud insurer, extent of insurer's liability. *Fraud. Evidence*, Relevancy. *Practice, Civil*, Jury trial.

Evidence warranted findings that one insured by a Massachusetts policy of fire insurance had not made an overstatement to the insurer of the value of property lost with intent to secure an advantage in determining his loss and therefore that such overstatement was not an attempt to defraud the company barring him from recovery.

An exception to a refusal, at the trial of an action upon a policy of fire insurance, to rule that market value was the fair test of indemnity, was overruled where it appeared that the plaintiff prevailed on counts of the declaration based upon an amount of loss which had been agreed upon by the parties.

---

* The nine companion cases were brought by the same plaintiff against the following defendants, respectively: Fulton Fire Insurance Company, Firemen's Insurance Company, Northwestern National Insurance Company, Chicago Fire and Marine Insurance Company, Rhode Island Insurance Company, Pennsylvania Fire Insurance Company, Southern Fire Insurance Company, Ohio Farmers Insurance Company, New England Fire Insurance Company.

Instructions, given at the trial of an action upon a policy of fire insurance upon the issue of the value of property lost, so far as material were consistent with the established principle that the extent of the insurer's liability is indemnity for the loss actually sustained.

The evidence at the trial of an action upon a policy of fire insurance not showing that the plaintiff knew that the policy did not make payment of premium a condition to the attaching of the risk, evidence was admissible that, after a fire which occurred before payment of premium, he had inquired of the broker who had procured the insurance whether he was insured.

No error appeared in permitting the district chief of the fire department of the municipality where a fire causing a loss under a fire insurance policy had occurred to testify at the trial of an action upon the policy that in his opinion the fire was caused by spontaneous combustion, or in permitting a fire inspector to testify that he saw no evidence of incendiarism.

No error nor abuse of discretion appeared in the allowance of a motion by the plaintiff for a jury at a second trial of an action, where the first trial had begun with a jury and was completed without jury under a stipulation of the parties in which the plaintiff waived his jury claim.

TEN ACTIONS OF CONTRACT. Writs in the Superior Court dated October 17, 1931.

The actions were tried together before *Walsh*, J.

*G. B. Rowell*, (*A. R. Berge* with him,) for the defendants.

*W. J. Killion*, (*F. J. Good* & *K. P. Hern* with him,) for the plaintiff.

RONAN, J. These ten actions of contract are brought against the defendants, who issued fourteen policies insuring the plaintiff against loss by fire to furniture, fixtures, photographic supplies and negatives, which were located in a studio owned and maintained by him in Boston and were damaged by fire on the evening of December 23, 1930. The jury returned a verdict for the plaintiff in each case and the cases are here upon the exceptions of the defendants. There is a second bill of exceptions to the action of a judge other than the trial judge in granting the plaintiff a jury claim under the circumstances hereinafter stated.

There was evidence that the plaintiff had occupied this studio, which was located upon the top floor of a four-story building, for ten years prior to the fire. A tenant on the second floor had moved out, and another tenant, the plaintiff's lessor, which occupied the first and third floors, in-

tended to vacate in January, 1931, and had requested the plaintiff to remove from its premises a considerable quantity of photographic mounts or folders contained in wooden boxes which this tenant had permitted the plaintiff to store in the cellar of its premises. This material was placed in the plaintiff's studio within a week before the fire. The plaintiff had received a one-year lease of the top floor about seven days before the fire, but the lease had not been executed at the time of the fire. On account of the fact that he might be the only tenant in the building, the plaintiff deemed it advisable to secure fire insurance and sent for one A. D. Harry, an insurance broker, and told him that he wanted $12,000 insurance on the furnishings and equipment and $3,000 upon the negatives. Harry told the plaintiff to give him "something" that Harry could show to his companies. The plaintiff picked up a piece of paper from the waste basket and wrote a list showing certain furnishings, equipment, materials and negatives, amounting to $14,500. Later Harry told him that he could not insure the negatives but could give him $12,000 on the merchandise. Policies in this amount were delivered to the plaintiff. When informed by Harry that he was unable to procure insurance on the negatives, the plaintiff called in another broker and requested him to place insurance upon the negatives. He informed this broker of the insurance that he had secured from Harry. This broker requested the plaintiff to give him some more insurance on his merchandise. The plaintiff agreed to take additional insurance and policies for $6,000 on the furnishings, equipment and materials and $3,000 on the negatives were issued. Soon after the fire the plaintiff hired one Culbert, an experienced adjuster, to assist him in settling and collecting the amount of the loss. Culbert gave him a blank form and told him to make out a list of the articles that he had in the studio at the time of the fire and to put down the estimated values in the column marked "Value" — "what he would have to take and pay to replace them." Culbert said the column headed "Loss" could be left vacant and that, when he and the adjusters inspected the various

articles, they "would determine whether there was a total loss on that or only a partial or none at all." The plaintiff put down figures in the value column for each article. Culbert added a few items as partitions, doors and wiring. The total of the figures appearing in the value column of this list was not given but the sum amounted to $27,081. The list contained the statement that "As considerable of the stock, etc. has been burned out of sight, this list is presented as being to the best of the owner's memory." At the trial the plaintiff testified that the fair value of the goods contained in the list was $20,000 to $21,000; that he did not put down any figures as to the loss; that he did not expect the insurance company to pay the amount set forth in the value column; that he did not understand that he was making any claim against the companies for that amount but he understood that the adjusters would meet, decide what his merchandise was worth and determine his loss. This list was given to a representative of the insurance companies on January 7, 1931. Various conferences between the adjusters were held and, on March 7, 1931, a value and loss memorandum setting forth the sound value of stock, fixtures and negatives as $15,000 and the total loss as $13,000 was executed by the adjusters of the plaintiff and the defendants. An adjuster for one of the companies requested the plaintiff's signature. The plaintiff demurred to signing the memorandum until he was informed by his adjuster that the adjuster for this company had said in substance that the statement of the sound value would make no difference so long as the plaintiff was paid $13,000. Later, the plaintiff executed and delivered to the defendants proof of loss with figures corresponding to those in the memorandum. The plaintiff recovered on a count in his declaration seeking recovery from each defendant of its *pro rata* of this total settlement of $13,000.

The principal contention of the defendants is that the submission of this list with the values thereon by the insured to the insurers constituted, as matter of law, an attempt to defraud the insurers, and that, as the policies were in the standard form, containing the provision that

they would be void "if the insured shall make any attempt to defraud the company, either before or after the loss," the insurers were thereby relieved from any liability and consequently the judge should have granted the motions for directed verdicts.

The law of this Commonwealth is settled that the furnishing to the insurers by the insured of a statement of values that he knows to be false, for the purpose of securing an advantageous position in the settlement of the loss, is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss. That was decided when this case was here before. *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487. That decision rested upon the finding of the trial judge that the plaintiff "knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered, but not with the intent to defraud the insurers" (page 488). This established principle of law is decisive if the evidence presented at the second trial is incompatible with any reasonable conclusion other than that the plaintiff made an attempt to defraud the defendants. And this is so, although the burden of proof rested upon the defendants to show the existence of such an attempt. *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392. *Hurd* v. *Eastern Massachusetts Street Railway*, 254 Mass. 204. *Mailhot* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 277. *Daignault* v. *Berkshire Street Railway*, 277 Mass. 227. *Brennan* v. *Schuster*, 288 Mass. 311. We must take that view of the evidence most favorable to the plaintiff in deciding if there was error in the denial of the motions of the defendants for directed verdicts. *Shea* v. *American Hide & Leather Co.* 221 Mass. 282. *Karjavainen* v. *Buswell*, 289 Mass. 419.

These policies were contracts of indemnity, but the liability of the companies was limited by the provision contained in each policy that the insurer "shall not be liable beyond the actual value of the insured property at the time

any loss or damage happens." G. L. (Ter. Ed.) c. 175, § 99. The jury might reasonably expect that opinions of the actual value of the plaintiff's property, which is described in considerable detail in the record, would vary to some extent and that persons familiar with the value of such property would honestly differ in appraising its worth. An owner by reason of his close association and use of his property or swayed unduly but unconsciously by his own personal interest might in good faith believe that it was worth more than its actual value. The nature of the property may be such that the ascertainment of its value must to a large extent rest upon opinion and sound judgment. *C. W. Hunt Co.* v. *Boston Elevated Railway,* 199 Mass. 220. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1. *Cross* v. *Sharaffa,* 281 Mass. 329. *Picard* v. *Allan,* 285 Mass. 15. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602. *Piper* v. *Childs,* 290 Mass. 560. A valuation may be so exaggerated and excessive as to constitute a deliberate and wilful overvaluation; and its use to influence the judgment of another who was under an obligation to pay in accordance with actual value would necessarily imply an intent to deceive as the natural and proximate consequence of such conduct. *Commonwealth* v. *Farmer,* 218 Mass. 507. *Standard Oil Co. of New York* v. *Back Bay Hotels Garage, Inc.* 285 Mass. 129. *Commonwealth* v. *Coshnear,* 289 Mass. 516. *Sherburne* v. *Meade,* 303 Mass. 356. *Claflin* v. *Commonwealth Ins. Co.* 110 U. S. 81. *Hyland* v. *Millers National Ins. Co.* 91 Fed. (2d) 735.

The plaintiff's intent in preparing and submitting to the defendants a list of the damaged property together with figures denoting its value, but omitting to state the amount of loss, was a question of fact for the jury to determine upon all the evidence. *Commonwealth* v. *Walker,* 108 Mass. 309. *Commonwealth* v. *Althause,* 207 Mass. 32. *Globe Discount & Finance Corp.* v. *New Jersey Ins. Co.* 293 Mass. 267. *Berry* v. *Kyes,* 304 Mass. 56, 60. If the statement of value as submitted by the plaintiff was found to be false that fact alone would not bar recovery. An insured is not bound at his peril to submit as the amount of his loss a

figure no higher than the amount of loss as finally deter-
mined. He must act in good faith in an honest effort to
ascertain the truth as to the value of his property and the
amount of his loss and furnish this information to the
insurers. An innocent mistake or an accidental misrepre-
sentation will not deprive the insured of the benefits of
the policies. An overstatement of value in a proof of loss
does not avoid a contract of insurance in the standard
form unless it was fraudulently made. *Little* v. *Phoenix
Ins. Co.* 123 Mass. 380. *Towne* v. *Springfield Fire & Ma-
rine Ins. Co.* 145 Mass. 582. *Shapiro* v. *Security Ins. Co.*
256 Mass. 358. In *Goldstein* v. *Franklin Mutual Fire Ins.
Co.* 170 Mass. 243, the plaintiff submitted a proof setting
forth the loss at $2,802.04. He carried two policies for
$1,000 each and sought to recover from the defendant
company, which had issued one of the policies, one half
of his loss. The trial judge found in his favor for $402.43
— one half of the award made by the arbitrators. The
entire opinion overruling the defendant's exceptions was
as follows: "The facts disclosed in this case certainly
furnished strong evidence of a fraudulent overvaluation
by the plaintiff, and would have well warranted a finding
to that effect, but we cannot say that the court was bound,
as matter of law, so to find." In *Soler & Co.* v. *United
Firemen's Ins. Co.* 299 U. S. 45, the insured presented a
proof of loss exceeding $35,000 and demanded payment
of $30,000, the full amount of the policy. The proof con-
tained an item of $2,524.50 which it could be found was
the contract price the insured was to receive for manu-
facturing goods belonging to a third person. The jury
returned a verdict of $17,000. The contention of the in-
surer, that the inclusion of the labor item in the proof
and the amount of the verdict showed as matter of law
that the insured had made a fraudulent claim, was not
sustained. The court said at page 50: "Policy holders may
present inaccurate proofs of loss without conscious dis-
honesty or intent to defraud; different views of value are
common; memory is faulty; insurance company and as-
sured often entertain widely different views concerning the

policy; and evidence cannot always be produced to establish something declared to be true in entire good faith." *National Fire Ins. Co.* v. *Renier*, 22 Fed. (2d) 671. *Globe & Rutgers Fire Ins. Co.* v. *Stallard*, 68 Fed. (2d) 237. *Palace Cafe* v. *Hartford Fire Ins. Co.* 97 Fed. (2d) 766.

The jury could find that the plaintiff did not furnish his estimate of value with any intent to secure by an overstatement of value an advantage in determining his loss, and that he relied upon the instruction of an experienced adjuster in furnishing this information to the insurers as an aid in arriving at the amount of the actual loss which, he understood, was to depend upon an inspection of the property itself. The defendants had the right to replace the property destroyed by other property of similar kind and quality, and replacement value has been held competent in determining the valuation of property. *Waltham Watch & Clock Co.* v. *Waltham*, 272 Mass. 396. The plaintiff furnished the insurers with his books and records, including his check book, bills, and the card index of his customers. There is no evidence that he refused to produce any record they desired or that he concealed or attempted to conceal any fact from them. The agreement upon the amount of the value and the loss of his property could be found to have been made by the plaintiff in order to secure the prompt payment of the loss and to avoid the delay and expense incidental to litigation. The jury had the opportunity of observing the plaintiff and his adjuster and of determining their credibility. The actual loss has never been determined by a jury and we are unable to say how far, if any, it would differ from the plaintiff's testimony that it amounted to $20,000 or $21,000. At the previous trial there was an express finding by the trial judge that the plaintiff had "knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered, but not with the intent to defraud the insurers." *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, 488. Upon that finding it was ruled that the plaintiff had attempted to defraud the defendants. The jury were fully instructed at the second

trial that there could be no recovery if the plaintiff knowingly made a false representation for the purpose of gaining a position of advantage in the settlement of his loss and they could not have returned verdicts for the plaintiff unless they found that the plaintiff had not made such representations. We think that the jury upon the evidence could so find. The cases were properly submitted to the jury and there was no error in refusing to grant the motions for directed verdicts.

The defendants contend that the plaintiff procured the insurance by fraud. The plaintiff gave to the broker Harry a paper setting forth the property upon which he desired to secure insurance. The plaintiff testified that it did not include all his property and Harry testified that he knew it was not a complete inventory of the property in the studio. Both could have been found to have understood that the paper, from its appearance and purport, was a rough estimate of a part of the property furnished for the purpose of showing that the plaintiff had sufficient property to warrant the issuance of the insurance in the amount he requested. There was evidence that the second broker knew of the insurance that had been secured by Harry before he (the second broker) secured additional insurance for the plaintiff. Whether the policies or any of them were, in the circumstances disclosed by the evidence, obtained by fraud was properly submitted to the jury. *Morrison* v. *Boston Ins. Co.* 234 Mass. 453. *Clarke* v. *Massachusetts Title Ins. Co.* 237 Mass. 155. *Commonwealth* v. *Cooper,* 264 Mass. 368. *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391.

The defendants excepted to the refusal of the judge to grant certain requests for instructions. The judge emphasized the governing principle set forth in *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, and the jury could not have understood that it was necessary for the defendants, in order to prevent recovery on account of an attempt to defraud, to show that they were actually defrauded or to show deceit upon the part of the plaintiff and injury to them as set forth in their twenty-third and fifty-fourth requests. The jury were fully and correctly instructed as

to what would constitute an attempt to defraud. The jury were also instructed that an intentional overstatement of value submitted by the plaintiff to the defendants would establish an intent to defraud. Such an instruction would include an overstatement in the case of a single item, *Piper* v. *Childs*, 290 Mass. 560, 562, and the defendants show no prejudicial error in the refusal of their thirty-eighth request as to the valuation of a single item. If there were an exaggeration of values in the list it would have to occur in one or more items.

The defendants contend that there was error in refusing to give their fifty-sixth and fifty-seventh requests, to the effect that market value was the fair test of indemnity provided by the policies. These requests were immaterial because the counts upon which the plaintiff prevailed were based upon the agreed loss of $13,000 and not upon the determination of the actual value of the plaintiff's property. So far as the question of value was material upon the issue of the plaintiff's intent in procuring the insurance and in adjusting the loss, the instructions were sufficient. The judge stated to the jury that value if used without qualification means market value but that market value is not necessarily the only correct measure of indemnity, which was the fair value of the thing destroyed. He then instructed the jury to consider the age, condition and character of the articles destroyed, whether they were in common use and could be readily procured or whether to get the exact article might entail delay and expense. There was evidence that the plaintiff could replace his equipment with new articles, which could easily be procured in the open market; but there also was evidence that he had some of the equipment made, and that he had purchased a large amount of it as second hand. The jury were not required to find that there was an available market for the purchase of second hand articles substantially like those that had been destroyed. The entire portion of the instructions upon the question of value was consistent with the well established principle that the extent of liability of the insurer is indemnity for the loss actually sustained. *Wall* v. *Platt,*

169 Mass. 398, 407. *Kingsley* v. *Spofford*, 298 Mass. 469.

The defendants excepted to the admission of evidence of the plaintiff that, after the fire, he telephoned to each of the two brokers who had procured the insurance and inquired if he was insured. The premiums had not then been paid. The policies did not make the payment of the premiums a condition precedent to the attaching of the risk. *Michelson* v. *Franklin Fire Ins. Co.* 252 Mass. 336. *American Mutual Liability Ins. Co.* v. *Condon*, 280 Mass. 517. The evidence, however, did not show that the plaintiff had knowledge of that fact. The defendants contended that the plaintiff was engaged in the attempt to defraud them. His conduct in dealing with the insurance was competent in so far as it shed any light upon his intent. The evidence permitted an argument that the plaintiff would have paid the premiums if he had intended to defraud the defendants. We cannot say that this evidence was entirely lacking in probative effect, even if of slight import. *Commonwealth* v. *Dow*, 217 Mass. 473, 480. *Rioux* v. *Cronin*, 222 Mass. 131. *Commonwealth* v. *Lindsey*, 223 Mass. 392. *Commonwealth* v. *Cooper*, 264 Mass. 368, 376.

The district chief of the fire department, who was present at the fire and afterwards inspected the premises, was permitted to testify that the fire was caused by spontaneous ignition. He could have been found to be qualified to express an opinion. One of his duties was to report the cause of a fire to the fire marshal. He was properly permitted to give his opinion as to the cause of the fire. *Edward Rose Co.* v. *Globe & Rutgers Fire Ins. Co.* 262 Mass. 469. A fire inspector was allowed to testify that he saw no evidence of incendiarism. He had examined the premises to determine the cause of the fire. We think it was competent for the plaintiff to show that this witness did not observe anything that indicated to him that the fire was set. *Clark* v. *Clark*, 168 Mass. 523. *McCoy* v. *Jordan*, 184 Mass. 575. *Gorham* v. *Moor*, 197 Mass. 522.

The defendants excepted to the allowance of the plaintiff's motion, filed after the defendants' exceptions taken

at the first trial had been sustained, to claim a jury trial. It was alleged in the affidavit accompanying this motion that, after the first trial before a jury had proceeded for a few days, counsel for the defendants became ill and the trial was suspended for three days; that then the judge in charge of the jury list ordered other counsel for the defendants to continue and complete the trial, but this attorney was not prepared to proceed with the trial; that the plaintiff then waived his right to jury trial in order to secure a termination of the litigation, to save expense, and to accommodate the attorney who had been ordered to continue with the trial; and that later, when counsel recovered from his illness, the trial was completed by the judge before whom it was commenced. It also appears that on the day the trial was resumed before this judge, without a jury, the parties had entered into a stipulation in which the plaintiff waived his jury claim and the parties agreed that the trial, which had commenced before a judge and a jury, should continue before this judge alone, and that the evidence already introduced at the jury trial should be considered as evidence in the trial without jury.

The defendants contend that, the plaintiff having waived his jury claim, the judge was without power to permit him to reclaim it, but, if the judge had the power, it was error to exercise it on account of the stipulation made between the parties for resuming the first trial without a jury. Neither the statute, G. L. (Ter. Ed.) c. 231, § 60, nor Rule 44 of the Superior Court (1932) limits the power of the court to grant a jury trial to one who had not within the prescribed time made any request for such a trial. The statute makes provision for the late filing of a jury claim in any particular case by a special order of the court. The authority conferred upon the court is consistent with the remedial nature of the statute. The allowance of the motion was within the scope of the statute and the action of the judge was within the rule permitting the court by special order to extend the time within which notice that a party desires a jury trial may be filed. The granting of the plaintiff's motion was discretionary, and the defendants

fail to show that there was any abuse of sound judicial discretion. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576. *Graham* v. *Middleby,* 213 Mass. 437. *Gouzoulas* v. *F. W. Stock & Sons,* 223 Mass. 537. *Norcross* v. *Haskell,* 251 Mass. 30. *Solomon* v. *Boylston National Bank,* 269 Mass. 589. *Alpert* v. *Mercury Publishing Co.* 272 Mass. 39. The action of the judge was not inconsistent with the terms of the stipulation but in any event he was not bound by it. *Paper Trucking Co.* v. *Russo,* 281 Mass. 209. *Symmes Arlington Hospital, Inc.* v. *Arlington,* 292 Mass. 162.

There is nothing in the various other exceptions that requires discussion, in view of what has already been said. There was no error in respect to any of them.

*Exceptions overruled.*