**TRU–FIT CLOTHES, Inc., a body corporate of the State of Maryland**

v.

**UNDERWRITERS AT LLOYD'S LONDON (Oakley, Vaughan & Johnson, Inc., Intermediary).**

**TRU–FIT CLOTHES, Inc., a body corporate of the State of Maryland**

v.

**AMERICAN INSURANCE CO., NEWARK, NEW JERSEY, a body corporate of the State of New Jersey.**

**TRU–FIT CLOTHES, Inc., a body corporate of the State of Maryland**

v.

**The CHARTER OAK FIRE INSURANCE COMPANY, a body corporate of the State of Connecticut.**

**Civ. Nos. 8720–8722.**

United States District Court
D. Maryland, Civil Division.
May 14, 1957.

· G. C. A. Anderson, John F. King, and Philip V. Hendelberg, Baltimore, Md., for plaintiff.

Charles Markell, Jr., Hilary W. Gans, and Markell, Veazey & Gans, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

These suits were brought on policies of fire insurance covering a stock of clothing. Two issues were presented: (1) the amount of the loss; (2) whether the insured had been guilty of such fraud or false swearing in connection with the loss as would avoid the policy. The jury's verdict was for the defendants. Plaintiff's motion for new trial raises the question whether the jury was properly instructed on the issue of fraud and false swearing.

On the evening of February 16, 1955, a fire started in the basement of plaintiff's East Baltimore St. store shortly after the store was closed for the night. There was relatively little fire, but a great deal of charring, smoke and water damage. During the fire the rear wall collapsed, killing six firemen. For this reason the police refused to allow anyone except the Fire Department and the Salvage Corps in the building for several weeks, while the Fire Department examined the debris for evidence of arson. That fact is relevant, because plaintiff contended that there was a large "out of sight" loss, i. e. that a large part of its stock had been completely consumed in the fire, and Chief Knoerlein testified that he examined every piece of cloth and each item of debris in the building, and that he and his men did not find any buckles, zippers, hangers or buttons, which would be found if any clothes had been entirely consumed; indeed no item of clothing, however fragile or combustible, was found which had been more than half consumed. The damage to the merchandise from fire, smoke and water, however, was so great that it was treated as a total loss.

As soon as possible after the fire, a joint physical inventory was taken by representatives of plaintiff and defendants. The inventory was valued at retail prices less 37%, which is the way plaintiff had reported it on the monthly

reports which fixed the amount of the insurance. So valued, it came to $63,-582.62, of which roughly two-thirds was found in place and one-third was removed from the debris or otherwise found out of place. Nevertheless, plaintiff's adjuster, Gould, prepared and filed a proof of loss, sworn to by plaintiff's president, Goldstein, based on figures derived from plaintiff's books by plaintiff's accountant, Smith, which stated that the merchandise on hand at the time of the fire had a value of $132,178.03, calculated as above indicated. These figures were so clearly erroneous, for a number of reasons which need not be gone into here, that I instructed the jury that in determining the amount of the loss they should not give any weight at all to the books or any calculations made therefrom, and plaintiff took no exception to that instruction.

The only exception which plaintiff took to the charge dealt with the issue of fraud and false swearing. Each of the policies contained a clause avoiding the policy "if the insured has concealed or misrepresented any material fact". The jury was instructed that the burden of proof on that issue was on defendants; that "where an insured knowingly and wilfully overestimates in his proof of loss the value of the property destroyed, with the intention of deceiving the insurer, such overvaluation will avoid the policy and defeat any right of the insured to recover thereon. On the other hand, where an insured person, in making proof of loss by fire, overestimates through mistake or inadvertence, the value of the property destroyed, the overvaluation does not amount to fraud sufficient to avoid the policy. To constitute false swearing within the meaning of the contract of insurance, so as to render the policy void, the statement so made must not only be untrue, but it must be shown that it was knowingly and intentionally stated with knowledge of its untruthfulness, or that it was so stated as the truth when the party did not know it to be true, and had no reasonable grounds for believing it to be true, and that it was made with

the purpose to defraud." This test was taken directly from United States Fire Ins. Co. v. Merrick, 171 Md. 476, 491, 190 A. 335, the latest Maryland case cited by plaintiff.

The charge continued: "An insurance policy is a contract of the highest good faith, and it requires the exercise of good faith by the parties to the contract; and if the jury should find that the assured in making its claim under the policies of insurance, for the purpose of exaggerating the amount of said claim, wilfully, knowingly, and intentionally, for the purpose of recovering more than it is entitled to, makes a very substantial exaggeration in the amount of said claim, then the policies of insurance are void and the insured is entitled to no recovery thereunder." The jury was told that the issue was not whether the insured made an overvaluation of the inventory, but whether the insured "wilfully misrepresented the quantity of inventory existing at said premises on said date. If the jury finds that there was a wilful misstatement with intent to defraud the defendant, the jury shall find the policy void, even though they find that the defendants investigated the matter before such wilful misstatement was made and were not prejudiced by relying on such wilful misstatement;  *  *  * ."

The jury was instructed that a corporation acts through its officers and agents, and is bound by their actions on its behalf. The acts of plaintiff's adjuster, accountant and president which defendants claim were fraudulent were summarized and discussed. Plaintiff took no exception to the fairness of that discussion. The charge continued: "We are dealing here with individual people who are charged with fraud, and you have to look at each one in a sense separately. One person has to be guilty of fraud himself before you can find the company guilty. If any one of three is guilty, his fraud is charged against the plaintiff and would require a verdict for the defendants. But in determining what a person knew, he is charged with what you will find from the evidence that he

knew, what he admits he knew, or what you find from the evidence he must have known. But he is not charged with what somebody else knew." The test of false swearing taken from United States Fire Ins. Co. v. Merrick was repeated, and the jury was instructed to apply it in considering the conduct of each of the three individuals.

■■■■ The jury was told that negligence or stupidity in keeping the books would not bar plaintiff's claim, although it would affect the amount. Then came the portion of the charge of which plaintiff complains: "Intent to defraud is not to be presumed and the trier of fact— that is, the jury—should make all reasonable allowance for lack of knowledge, or sound judgment, or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one's own interest, but when it is established that the insured has knowingly made false statements even in such a matter as value, for the purpose of influencing the adjustment of the loss, public policy demands that the contract be so construed as to discourage such conduct and to give full protection to the insurer. The furnishing to the insurers by the insured of a statement of values that he knows to be false, for the purpose of securing an advantageous position in the settlement of the loss, is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss." This quoted material was taken from the opinions in Gechijian v. Richmond Insurance Co., 298 Mass. 487, 489, 11 N.E.2d 478; Id., 305 Mass. 132, 136, 25 N.E.2d 191; Bockser v. Dorchester Mut. Fire Ins. Co., 327 Mass. 473, 99 N.E.2d 640, 24 A.L.R.2d 1215. Plaintiff's only exception was as follows: "Mr. Anderson: I object to so much of the Court's charge wherein the Court read from the Massachusetts case for the reason that it may be in conflict with the rules laid down in the Maryland cases."

Plaintiff now argues that the court erred "in instructing the Jury that false statements of value made by the insured in a proof of loss for the purpose of securing an advantageous position in settlement voids the policy because the Maryland law requires that statements by the insured must amount to such concealment, even at trial, as to result in a disadvantage to the insurer giving rise to an estoppel." Plaintiff relies on Automobile Ins. Co. of Hartford, Conn. v. Thomas, 153 Md. 253, 138 A. 33, 37, 53 A.L.R. 669, where the Court of Appeals said: "It is generally true that, if there has been no concealment by the insured, and no resulting disadvantage to the insurers which would give rise to an estoppel, the notices and proofs given do not restrict the claim finally, but may be corrected. And correction has been permitted even at a trial." But the Thomas case was not a case of wilful misrepresentation or concealment. The question there was whether the fall of a wall on a neighboring property during a thunder storm, a month after a fire, was due to the fire or to a stroke of lightning. The opinion recognized "the right of the insurers to a full, frank disclosure of all material facts". Neither the Thomas case nor any other Maryland case permits an insured who has been guilty of fraud and false swearing in his proof of loss to avoid the effect of his fraud simply because the insurer has found him out, and his misrepresentation or concealment has been unproductive.

Plaintiff's contention comes down to this: if the insurer has made some investigation itself and as a result has reason to believe that the amount of damage shown in the proofs of loss is grossly overstated, or if the plaintiff, seeing that his attempt at fraud will fail, repents after the trial is under way, the provision avoiding the policy for wilful misrepresentation cannot be invoked because the insurer has not been damaged. A similar contention was rejected by the Fifth Circuit in Chaachou v. American Central Ins. Co., 241 F.2d 889, 892–893:

"Moreover, if the law out of some misgivings about forfeitures, were to require that the insurer demonstrate that it had been misled to its prejudice by the fraud, the policy provision would both be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibilities and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that *vis-a vis* himself and the underwriter, there would be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were discovered in time to be legally or practicably effective. If it didn't work—if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. It would be an everything-to-win, nothing-to-lose proposition."

See also 3 Richards on Insurance (5th ed.) p. 1654, and 5 Appleman, Insurance Law and Practice, sec. 3589.

■ In the instant case, plaintiff based its claim on its books until they were shown to be untrustworthy at the trial, and then continued to claim that there had been a substantial "out of sight" loss. The jury, very properly in my opinion, found that there had been such fraud and false swearing as avoided the claim.

The portion of the charge to which exception was taken is not in conflict with Maryland law. The charge repeatedly emphasized the test set out in United States Fire Ins. Co. v. Merrick and, after careful review, seems to me to have presented the case fairly to both sides.

The motion for new trial is, hereby overruled.