Coven, J.
The plaintiff, a health care provider, brought suit against the defendant seeking recovery pursuant to G.L.c. 90, §34M for services provided to the defendant's insured. The trial court found that the noncooperation of the insured relieved the defendant of liability for the claim, and entered judgment for the defendant.
On July 4, 2003, Carlos Santiago (“Santiago”) was involved in an automobile accident in Lawrence, Massachusetts. The vehicle was insured by the defendant, Plymouth Rock Assurance Corporation (“Plymouth Rock”), under a policy that provided up to $8,000.00 in Personal Injury Protection (“PIP”) benefits. By letter dated July 9,2003, Plymouth Rock informed Santiago that attempts to contact him by telephone had been unsuccessful, and requested that he contact a claims representative as soon as possible. Although Santiago submitted a PIP application, Plymouth Rock refused to accept it on the ground that Santiago had signed on the wrong line. Santiago was so informed in a letter from Plymouth Rock dated July 16, 2003. Santiago failed to respond or return a new application despite being reminded to do so in a second letter by Plymouth Rock on October 7,2003.
In an effort to investigate Santiago’s claim, Plymouth Rock elected to have him submit to an independent medical examination (“IME”), and notified Santiago and his parents by letter dated September 16,2003. Scope Medical (“Scope”), the IME provider, then scheduled the IME and allegedly sent notice to Santiago. On October 1, 2003, Scope informed Plymouth Rock by letter that Santiago had failed to appear at the IME. The document stated that a letter had been sent to Santiago which included the IME date and location. However, Scope’s letter did not state who had sent the alleged notice to Santiago or in what manner.
On October 2, 2003, Plymouth Rock sent a letter to Santiago confirming that it had received notice of his failure to attend the scheduled IME, and informing him that Plymouth Rock was in the process of scheduling a second appointment for an IME. After Santiago failed to appear at the second scheduled IME, Scope provided Plymouth Rock with a notice of the failed appearance dated October 15,2003. That notice also stated that a letter had been sent to Santiago informing him of the rescheduled IME date and location. Upon receiving Scope’s notice of Santiago’s failure to appear, Plymouth Rock issued a denial of benefits letter to Santiago for his failure to cooperate. That letter was sent by certified mail.
*156 On July 15, 2003, Santiago had begun treatment with the plaintiff for a cervical sprain. When the plaintiff submitted an application for PIP payments of the services provided to Santiago, Plymouth Rock denied the plaintiffs claim on the basis that Santiago had failed to cooperate. Notice of the denial of his claim was provided to the plaintiff on October 16,2003.
The trial judge admitted the Scope documents into evidence under the business records exception to the hearsay rule, G.L.c. 233, §78. However, no one from Scope testified at the trial. Plymouth Rock instead called Peggy Davis (“Davis”), a supervisor at Plymouth Rock, to testily about the preparation of the Scope documents.
Pursuant to G.L.c. 90, §34M, noncooperation of an insured is a complete defense available to the insurer in a suit for PIP benefits. The Massachusetts standard automobile insurance policy purchased by Santiago from Plymouth Rock placed a duty upon the insured to cooperate with the insurer in order to hold the insurer liable for any claims. See Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 336-337 (1995). Section 34M requires that a PIP benefits claimant
shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due.
The failure of an insured to submit to an IME is evidence of noncooperation, Hodnett v. Arbella Mut. Ins. Co., 1996 Mass. App. Div. 131, 132.
Plymouth Rock had the burden of proving noncooperation at trial. Knight v. CNA Ins. Cos., 2002 Mass. App. Div. 3, 5. In support of its burden of establishing Santiago’s failure to attend the scheduled examinations, Plymouth Rock introduced only the Scope documents. Those documents were, in fact, the only evidence that letters were ever sent to Santiago notifying him of the IME appointments. As noted, Plymouth Rock submitted the Scope documents under the business records exception to the hearsay rule, G.L.c. 233, §78. That exception permits a document to be introduced into evidence if the court finds that the document was made: (1) in good faith; (2) in the regular course of business; (3) before the suit was filed; and (4) at or about the time the occurrence being recorded took place pursuant to a regular course of business to create such contemporaneous records. DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 105 (1983). Plymouth Rock relies on Beal Bank, SSB v. Eurich, 444 Mass. 813 (2005), to support the admissibilily of the Scope documents under §78. In Beal Bank, computer printouts from a separate company were allowed into evidence as a bank’s business records. The Supreme Judicial Court held that because the separate company maintained computerized records of information regarding loans, the bank had non-restricted access to those records, and the company had a business duty to maintain the records accurately, a finding was warranted that the records were made in the regular course of business. Id. at 817-818.
Beal Bank may not be read, however, to obviate the requirements of G.L.c. 233, §78 as to all records prepared or maintained in the course of business. As stated in Beal Bank, because it was the “normal business practice [of the separate company] to maintain accurate business records regarding such loans and to provide them to those acquiring the loan,” it was not necessary for the bank to “provide testimony from a witness with personal knowledge regarding the maintenance of the predecessors’ business records.” Beal Bank, supra, at 817- *157 818. In this case, however, Plymouth Rock did not have access to Scope’s records on a daily basis and Scope did not have the same business duty to maintain records accurately. It follows, therefore, that Plymouth Rock should have introduced testimony from a witness with personal knowledge of how the Scope records were kept. It would have been incumbent upon such a witness to demonstrate that each person in the chain of communication, from the observer to the record preparer, reported the information in question as a matter of business duty. See Wingate v. Emery Air Freight Corp., 385 Mass. 402, 409-410 (1982).
Plymouth Rock failed to do so. The only witness called, Davis, was an employee of Plymouth Rock, not of Scope. As the records were made by Scope and not Plymouth Rock, the indicia of reliability were missing. Id. at 410; NationsBanc Mortg. Corp. v. Eisenhauer, 49 Mass. App. Ct. 727, 734 (2000). Davis did not have any personal knowledge of how the Scope records were prepared. She could not identify which person at Scope sent the IME notices to Santiago or which person reported that Santiago did not attend the scheduled examinations. The Scope documents themselves merely stated that letters had been sent to Santiago which included information pertaining to the IME’s. The documents did not indicate who sent the letters to Santiago or the manner in which they were sent. Further, Plymouth Rock did not undertake any action, such as verifying the documents to acquire personal knowledge of the recorded events. See United States v. Childs, 5 F.3d 1328, 1333-1334 (9th Cir. 1993); United States v. Ulrich, 580 F.2d 765, 771-772 (5th Cir. 1978). While Plymouth Rock sent Santiago letters via regular mail stating that it had received notice of Santiago’s failure to attend the scheduled examination, there was no response from Santiago and no other evidence that he received notice of the scheduled IME.
Knowledge is an essential element of the defense of noncooperation, see Hodnett, supra, at 132, which Plymouth Rock had the burden of proving. Knight, supra, at 5. The only evidence that the insured had any knowledge in this case was the statement in the Scope letters that notice had been mailed to him. Without the Scope letters, there is no proof that Santiago knew of the scheduled IME’s and that his failure to attend amounted to willful noncooperation. See Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App. Ct. 359, 363 (2003).
Further, even if the Scope documents were admissible, “an insurer cannot be relieved of liability because of an alleged breach of a cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith.” Imperiali v. Pica, 338 Mass. 494, 498 (1959). There is little in the record to suggest that Plymouth Rock made diligent efforts to communicate with its insured and to secure his cooperation. Plymouth Rock’s letters to Santiago were sent via regular mail, with the exception of the termination of benefits letter, which was sent by both certified and regular mail. Thus, when an issue of particular benefit to Plymouth Rock was at stake, the insurer used certified mail. It would not have been unreasonable to expect that Plymouth Rock would have sent at least one notice letter to Santiago by certified mail, particularly after regular mail had proved unsuccessful. In using regular mail, Plymouth Rock risked “the fallibility of mail delivery and the possibility that [Santiago] may not in fact receive notice delivered by this method.” Town of Andover v. State Financial Services, Inc., 432 Mass. 571, 574-575 (2000).
Without the Scope documents, Plymouth Rock failed to introduce sufficient evidence to satisfy its burden of proving the noncooperation of its insured. Accord *158 ingly, the trial court’s judgment for the defendant is reversed and vacated. The case is returned to the trial court for an assessment of G.L.c. 90, §34M damages, including attorney’s fees, and for the entry of judgment in favor of the plaintiff in the amount so assessed.
So ordered.