Gardner, J.
The plaintiff, Charles G. Lee, II (“Lee”), allegedly sustained injuries from a rear-end collision while operating a motor vehicle owned by his mother, Claudia Lee (“Claudia”), and insured by the defendant, Premier Insurance Company (“Premier”). After denying Lee’s claim for Personal Injury Protection (“PIP”) benefits because of noncooperation, Lee sued Premier for breach of contract and violation of G.L.c. 93A and G.L.c. 176D. A jury awarded Lee $4,800.00 in medical expenses and $1,000.00 in lost wages. Having reserved the G.L.c. 93A issue, the trial judge found that Premier had reasonably denied Lee’s “to say the least fuzzy” claim for lost wages, but acted in bad faith in denying his claim for medical expenses, and accordingly awarded Lee double damages of $9,600.00 and attorney’s fees. Premier appeals only the trial judge’s medical-expenses award of double damages and attorney’s fees, arguing that, under Gechijian v. Richmond Ins. Co., 298 Mass. 487 (1937), the proper remedy for Lee’s exaggerated request for lost wages was not merely the denial of that exaggerated portion, but the denial of his entire insurance claim. We agree with Premier.[1]
*152 In Gechijian v. Richmond Ins. Co., the Supreme Judicial Court sought to interpret the term “defraud” in a number of fire insurance policies, all of which contained the following provision: ‘This policy shall be VOID ... if the insured shall make any attempt to defraud the Company either before or after the loss.” Id. at 488. In Gechijian, the trial judge found that the insured had provided the insurers with a schedule in which he “knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered, but not with the intent to defraud the insurers.” Id. In holding that such conduct was an attempt to defraud within the meaning of the above provision, the Supreme Judicial Court stated:
Intent to defraud is not to be presumed, and the trier of fact should make all reasonable allowance for lack of knowledge or sound judgment or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one’s own interest, but when it is established... that the insured has knowingly made false statements, even in such a matter as value, for the purpose of influencing the adjustment of the loss, public policy demands that the contract be so construed as to discourage such conduct and to give full protection to the insurer.
Id. at 489-490.
When the same case came before the Court a second time, it stated, “The law of this Commonwealth is settled that the furnishing to the insurers by the insured of a statement of values that he knows to be false, for the purpose of securing an advantageous position in the settlement of the loss, is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss.” Gechijian v. Richmond Ins. Co., 305 Mass. 132, 136 (1940).
Similarly, the Massachusetts standard automobile insurance policy purchased by Lee’s mother from Premier placed a duty upon Claudia, the insured, and Lee, who occupied the vehicle with her consent, to cooperate with Premier in order to hold it liable for any claims. See Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 336-337 (1995); Provenzano v. Plymouth Rock Assur. Corp., 2006 Mass. App. Div. 155, 156. The policy warned that “failure to cooperate with us may result in the denial of the claim.” See Provenzano, supra at 156 (“[Njoncooperation is a complete defense available to the insurer in a suit for PIP benefits.”).
In the instant case, the evidence clearly discloses that Lee more than doubled the average weekly wage that he actually made, both in his PIP application and again when he testified in his examination under oath. Lee also made false statements in both his examination under oath and at trial when he claimed to earn an annual income in 2003 that was three to four times higher than what he actually earned. The trial judge acknowledged such noncooperation, stating in his written decision that “Mr. Lee’s claim for lost wages was to say the least fuzzy. The Court could find that Premier was reasonable in questioning and eventually denying this aspect of Mr. Lee’s claim.” In light of Lee’s noncooperation as to his claim for lost wages, and pursuant to Gechijian and that Court’s advisement that “public policy demands that the *153 contract be so construed as to discourage such conduct and to give full protection to the insurer,”[2] id. at 489-490, we hold that Premier permissibly denied Lee’s entire insurance claim. The trial judge erred, therefore, in awarding Lee double damages of $9,600.00 and attorney’s fees under G.L.c. 93A for its denial of his claim for medical expenses.
The court’s judgment for the plaintiff on his G.L.c. 93A claim, and award of double damages and attorney’s fees on that claim, are reversed and vacated. Judgment on the G.L.c. 93A claim is to be entered for the defendant.
So ordered.

 Given our resolution of this issue, we need not address Premier’s argument regarding the trial judge’s concluding comment in his written decision that “this Court is troubled by the undercurrent that had the claimant been white and had this accident occurred in the suburbs this matter would have been handled differently.” Nor need we address Premier’s final argument that the trial judge erred in failing to rule on a number of its requests for rulings of law. We nevertheless note that, before the recent amendment of Mass. R. Civ. R, Rule 52, and the repeal of Mass. R. Civ. P., Rule 64A, both effective March 1, 2008, a trial judge, as here, rendered such requests for rulings superfluous when electing to make comprehensive findings of fact and rulings of law. MacKenzie v. Auto Supermart, Inc., 1986 Mass. App. Div. 165, 165-166.

 Although not binding, we also find persuasive the reasoning espoused in Tru-Fit Clothes v. Underwriters at Lloyd’s London, 151 F. Supp. 136 (D. Md. 1957), wherein the court stated, with respect to whether an exaggerated portion of an insurance claim compelled the denial of the entire claim, that “ [i]f it had worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were discovered in time to be legally or practically effective. If it didn’t work — if, before consummation fraud was detected — he would suffer no disadvantage whatsoever. It would be an everything-to-win, nothing-to-lose proposition.” Id. at 140.