BENNIE BOCKSER *vs.* DORCHESTER MUTUAL FIRE INSURANCE COMPANY
(and fourteen companion cases[1]).

Suffolk.    April 3, 1951. — June 5, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Insurance,* Fire insurance: attempt to defraud insurer. *Fraud. Agency,* Agent's fraud.

Evidence binding on the plaintiff in an action brought on a Massachusetts standard fire insurance policy after a loss required a finding that an adjuster hired by the plaintiff to adjust the loss had attempted to defraud the insurance company by submitting to it a false carpenter's

---

[1] The companion cases are by the same plaintiff against Anchor Insurance Company, The Continental Insurance Company, The Netherlands Insurance Company, Caledonian-American Insurance Company, Glens Falls Insurance Company, Hanover Fire Insurance Company, Seaboard Fire and Marine Insurance Company, Home Fire and Marine Insurance Company of California, Massachusetts Fire and Marine Insurance Company, The Insurance Company of the State of Pennsylvania, National Liberty Insurance Company of America, Rochester American Insurance Company, Granite State Fire Insurance Company, and American Union Insurance Company of New York.

bill misrepresenting the cost of improvements of the plaintiff's premises made by the carpenter before the loss.

Conduct of an adjuster, hired by the insured under à Massachusetts standard policy of fire insurance after a fire to adjust the loss with the insurance company, in attempting to defraud the company while acting within the scope of his employment was binding on the insured and resulted in forfeiture of his right to recover the amount of the loss where the policy provided that it "shall be void . . . if the insured shall make any attempt to defraud the company either before or after the loss," even though the adjuster's attempt to defraud was wholly unsuccessful and the insured personally did not attempt any fraud.

FIFTEEN ACTIONS OF CONTRACT. Writs in the Superior Court dated July 17, 1947.

The actions were tried together before *Hurley*, J.

*C. W. O'Brien*, for the defendants.

*W. G. Todd*, for the plaintiff.

WILKINS, J. The plaintiff was engaged in the wholesale plumbing and heating and oil burner supply business. These actions of contract on policies of insurance are to recover for a fire loss at the plaintiff's store at 303–307 Summer Street, Lynn, on February 12, 1947. The insured property included stock in trade, store and office furniture and fixtures, betterments, and improvements. There were verdicts for the plaintiff, and the defendants' exceptions are to the denial of their motions for directed verdicts. The policies, which are in the Massachusetts standard form, provide that they "shall be Void . . . if the insured shall make any attempt to defraud the company either before or after the loss . . . ." G. L. (Ter. Ed.) c. 175, § 99, as amended. The defence now relied upon is that a public adjuster hired by the plaintiff attempted to defraud the companies, and that the plaintiff is bound by the adjuster's acts. It is not now contended that the plaintiff personally had attempted any fraud, for the jury could have found to the contrary on the evidence.

The public adjuster was one Shalek, who died before the trial. The entire testimony as to the circumstances and terms of his hiring came from the plaintiff. The employment was made on the day after the fire at the suggestion

of an insurance agent of the plaintiff. Shalek came to the store and told the plaintiff that he could handle the loss on a percentage basis; that the plaintiff "did not know the first thing about adjusting a loss"; that Shalek "would take care of all the details in the adjustment of the loss"; and that all the plaintiff had to do was to take care of the inventory. He engaged Shalek to act as his public adjuster, and he did as Shalek said. He hired Shalek "to adjust his loss and do whatever was necessary to adjust the loss." Shalek did not do much except supervise and hand out orders. The plaintiff gave no instruction to Shalek but let him do exactly as he saw fit, relying upon him. He left the whole course of the adjustment to Shalek. He "had put everything in his hands, he trusted him and told him that he was the boss, and he would leave it to him to a certain extent as far as adjusting loss was concerned . . . originally he told Mr. Shalek to take care of adjusting the loss." The plaintiff priced the stock inventory and totaled the amount, and Shalek had nothing to do with that.

The fraud allegedly attempted by Shalek concerned two bills for improvements presented by him to one Patten, a representative of the defendants, which were in evidence: (1) A receipted bill of one Crooker, a carpenter and builder, for $17,519.90 for work done for the plaintiff in December, 1944, which the defendants contended had been increased from $5,200. (2) Bills of one Lee, an electrician, totaling $2,498.17, for labor and materials furnished the plaintiff in 1943, which the defendants contended had been marked up from $400. The plaintiff testified that he did not know that a statement had been filed by Shalek with Patten until he attended a hearing at the Lynn fire department; that he never saw the Crooker and Lee bills before they were filed with Patten by Shalek, and that he first learned about them at the inquest; that the plaintiff had called Crooker on the telephone, as a result of which Crooker came to his office; that he introduced Crooker to Shalek, saying that he wanted an estimate on putting the store back into shape; that he asked Crooker if the latter had duplicate bills, and Crooker

replied in the negative; that he could not find Crooker's original bills; that he did not ask Crooker to bring any blank billheads; that he never knew that Shalek told Crooker to build up the bill from less than $6,000 to more than $17,000; that he never paid Crooker $14,004.90 to make four thousand four hundred forty-six bins, as shown on the bill; that Crooker never made four thousand four hundred forty-six bins for him, never submitted a bill for $17,519.90, and he never paid Crooker any such amount; that the first time he learned that such a claim had been made for him by anybody was at the inquest; and that it was then that he first learned that Shalek had presented such a bill. The plaintiff testified that at Shalek's request he telephoned Lee, who came to the store; that he did not ask Lee to bring a blank billhead; and that he did not know whether he was present when they were first together.

The foregoing is a summary of evidence binding upon the plaintiff. This shows, as matter of law, an attempt to defraud by his adjuster. In *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, the trial judge found that the insured furnished the insurers a schedule wherein he "knowingly exaggerated the sound value of the property in order to be in a more advantageous position to be paid for the real loss suffered, but not with the intent to defraud the insurers" (page 488). In holding that such conduct was an attempt to defraud within the meaning of the clause in the standard policy with which we are concerned in the cases at bar, it was said, at pages 489–490: "Intent to defraud is not to be presumed, and the trier of fact should make all reasonable allowance for lack of knowledge or sound judgment or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one's own interest, but when it is established . . . that the insured has knowingly made false statements, even in such a matter as value, for the purpose of influencing the adjustment of the loss, public policy demands that the contract be so construed as to discourage such conduct and to give full protection to the insurer." When the same case came before this court a

second time, it was said, "The law of this Commonwealth is settled that the furnishing to the insurers by the insured of a statement of values that he knows to be false, for the purpose of securing an advantageous position in the settlement of the loss, is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss. . . . This established principle of law is decisive if the evidence . . . is incompatible with any reasonable conclusion other than that the plaintiff made an attempt to defraud the defendants. And this is so, although the burden of proof rested upon the defendants to show the existence of such an attempt." *Gechijian* v. *Richmond Ins. Co.* 305 Mass. 132, 136. See *Rappe* v. *Metropolitan Life Ins. Co.* 322 Mass. 438, 440–441.

The conduct of the adjuster in the cases at bar was far more reprehensible than a knowingly made exaggeration of sound value. Taking the case of Crooker alone, there were detailed misrepresentations of the actual cost of labor and materials based upon a false bill prepared upon a genuine billhead. Apart from the detailed testimony of Lee, Crooker, and others, which was not binding upon the plaintiff, the evidence permits of no inference inconsistent with an attempt to defraud.

There is still the important question as to the effect of such conduct of the agent upon his principal, the plaintiff. Except for the stock inventory, the plaintiff turned over to Shalek the entire charge of adjusting the loss and of conducting all dealings with the defendants. The furnishing of such statements as the defendants might require was an essential part of this employment. In general, the fraud of an agent acting in the course of his employment is binding upon his principal. *McCarthy* v. *Brockton National Bank*, 314 Mass. 318, 325. *Golding* v. *108 Longwood Avenue, Inc.* 325 Mass. 465, 466. Restatement: Agency, § 257. And notice to, or knowledge of, an agent, in the course of the transaction in which he is acting for his principal, is con-

structive notice to, or knowledge of, the principal. *Suit* v. *Woodhall*, 113 Mass. 391, 395. *Tremont Trust Co.* v. *Noyes*, 246 Mass. 197, 206–207. *New England Trust Co.* v. *Bright*, 274 Mass. 407, 412–413. *Union Old Lowell National Bank* v. *Paine*, 318 Mass. 313, 323–324. Restatement: Agency, §§ 268, 272.

The precise question is whether an agent's attempt to defraud, which was wholly unsuccessful, should be treated the same as similar conduct on the part of the principal and should result in forfeiture of the principal's rights under the policies. This is a matter upon which there is a difference of opinion in other jurisdictions. Couch on Insurance, § 1557. 29 Am. Jur., Insurance, § 1136. 45 C. J. S., Insurance, § 1021 (c). The majority, and we think the better reasoned, view is that the attempted fraud of the agent acting in the scope of his employment binds the principal. *Davis-Scofield Co.* v. *Reliance Ins. Co.* 109 Conn. 686, 690. *Mick* v. *Corporation of Royal Exchange Assurance*, 87 N. J. L. 607. Compare *S. C.* 87 N. J. L. 628. *Kantor Silk Mills, Inc.* v. *Century Ins. Co. Ltd.* 223 App. Div. (N. Y.) 387, affirmed 253 N. Y. 584. See *American Eagle Fire Ins. Co.* v. *Vaughan*, 35 Fed. (2d) 147, 149 (C. C. A. 4); *Hyland* v. *Millers National Ins. Co.* 58 Fed. (2d) 1003, 1006 (D. C. N. D. Cal. S. D.), affirmed 91 Fed. (2d) 735 (C. C. A. 9), certiorari denied, 303 U. S. 645; *National Union Fire Ins. Co.* v. *Schwab*, 241 Ala. 657, 659; *Saidel* v. *Union Assurance Society, Ltd.* 84 N. H. 232; *Mullin* v. *Vermont Mutual Fire Ins. Co.* 58 Vt. 113; *Jervis* v. *Burlington Mutual Fire Ins. Co.* 113 Vt. 518, 521–522. Contra *Metzger* v. *Manchester Fire-Assurance Co.* 102 Mich. 334; cited with approval in *Insurance Co.* v. *Scales*, 101 Tenn. 628, 634–639, and *Virginia Fire & Marine Ins. Co.* v. *Hogue*, 105 Va. 355, 366–370; restricted to agent ex necessitate in *Evans* v. *Crawford County Farmers' Mutual Fire Ins. Co.* 130 Wis. 189, 198–200. See also *Mechanics' Ins. Co.* v. *Inter-Southern Life Ins. Co.* 184 Ark. 625, 631–632. Any other result would tend to circumvent the public policy which calls for the enforcement of the clause in the Massachusetts standard policy now be-

fore us. See *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, 489–490. All that would be necessary is a complete delegation by the insured of the responsibility for the adjustment of the loss to a third party whose acts might be disavowed at the option of the insured to escape the consequences. And in the absence of detection the gain would accrue to the insured.

The motions for directed verdicts should have been granted. In each case the entry must be

*Exceptions sustained.*
*Judgment for the defendant.*