HAROLD J. WARREN, INC., d/b/a Professional Realty Co., Defendant, Appellant,

v.

FEDERAL MUTUAL INSURANCE COMPANY, Plaintiff, Appellee.

No. 6958.

United States Court of Appeals First Circuit.

Heard Oct. 3, 1967.

Decided Dec. 8, 1967.

Thomas J. Carens, Boston, Mass., with whom Roche & Leen, Boston, Mass., was on brief, for appellant.

John E. Lecomte, Boston, Mass., with whom Princi & Lecomte, Boston, Mass., was on brief, for appellee.

Before ALDRICH Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from a declaratory judgment that a certain fire insurance policy issued by plaintiff on defendant's building is null and void. The basis for this judgment is the district court's finding that in making claim against the plaintiff insurer under the policy for a fire loss in its building, defendant wilfully misrepresented and overstated the amount of the loss, thereby attempting to defraud or gain an advantage in negotiating with the plaintiff.

The principal question raised is whether the evidence adduced supports this finding. The insured building is a four story structure of Class A construction consisting of brick walls with reinforced steel and poured concrete structural ceil-

ings and floors. It is located on Massachusetts Avenue in Boston and contains stores and offices. Among other things, the policy provided coverage for physical damage and loss of rents. It also contained the following Massachusetts statutory "Fraud and Concealment Clause":

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Mass.Gen. Laws ch. 175, § 99.

Following the fire, which occurred in April 1965, the defendant corporation, through one Warren, its president, and Winnick, its treasurer, hired an experienced public adjuster named Milton to represent it in adjusting its fire loss. The company through Warren also engaged an architect named Larkin to draw plans and specifications for work to be done on the building. These plans encompassed both fire and nonfire damage repairs and alterations. Plaintiff insurance company retained one Stratton as its adjuster. Milton who had full authority to act for the defendant, submitted a claim to Stratton for some $40,680 which was later revised to $67,-698.46. Stratton testified that there was also a rental loss claim for an additional $12,000.

Because of failure to agree on amount, the parties went to reference under the Massachusets statute.[1] The referees awarded the defendant some $42,967 for damages to the building, plus $3,000 for rental loss. Before this award was returned, plaintiff notified defendant it was denying all liability under the policy and commenced this diversity action to have the policy declared null and void.

Defendant contends that the referees' award may not be collaterally attacked unless there was evidence of fraud before the district court that was not before the referees. It claims there was no such evidence here. We do not agree.

■ From our reading of the record it seems clear that new evidence of fraud was presented at the trial but even if this were not the fact, defendant's conclusion does not follow. Under the reference statute, the sole function of the referees is to determine the *amount* of loss—not the ultimate liability.[2] Of course, the issue of fraud presents a question of ultimate liability. Gechijian v. Richmond Ins. Co., 298 Mass. 487, 11 N.E.2d 478 (1937) and Gechijian v. Richmond Ins. Co., 305 Mass. 132, 25 N.E.2d 191 (1940).

These cases clearly voice the strong Massachusetts policy against insurance fraud. The parties may not consider themselves free to bargain over terms with disregard of the actual amount of loss. In *Gechijian I* the court stated at 488–489, at 479 of 11 N.E.2d:

"In our opinion a design on the part of the insured to gain a position of advantage in the settlement of the loss through false representations is a fraudulent design and the making of such representations knowingly for that purpose is an 'attempt to defraud' within the meaning of those words as used in the policy, even though the insured may not have expected or intended ultimately to obtain more than compensation for the actual loss. * * * The policy does not contemplate that after a loss the insured and insurer shall occupy the positions of vendor and vendee, free to haggle over the price of the property destroyed without regard to its true value."

1. Mass.Gen.Laws ch. 175, § 99 et seq.

2. "A company which in compliance with section one hundred or one hundred and one D joins in reference proceedings shall not thereby be held to have waived any legal defence to the claim in respect to which the reference proceedings are held and such proceedings shall fix only the amount of the loss sustained by the insured * * *." Mass.Gen.Laws ch. 175, § 101 E.

■ An analysis of the evidence in the light of these principles shows that the district court's finding of fraud was clearly justified.[3] The first item in the revised claim was a contract for $44,100 with New England Partition & Fixture Company, based on plans and specifications drawn by defendant's architect. Stratton requested a breakdown of this sum from Milton but was unable to get it prior to reference.

At an early stage in the reference proceedings defendant conceded that $7,320 of the $44,100 represented nonfire damage and should not have been included. Moreover, the architect testified and Warren himself admitted that New England's bid was for both fire and nonfire work. In any event, because of Warren's testimony that the plans had been drawn at his direction and that he had brought the architect through the building pointing out certain things to him, there can be no doubt of his awareness that the specifications were for both fire and nonfire damage.

Another pertinent item in the revised claim is $8,750 for third floor ventilating and air-conditioning. There was evidence from which the district court could reasonably conclude that this amount represented the cost of replacing all the air-conditioning on the third floor and that the repairs for fire damage actually amounted to little more than $3,000. Indeed, Milton had previously received a fire damage estimate of approximately $3,000, an estimate that was supported by an expert produced by plaintiff. In fact the company that submitted the $8,750 bid indicated that only one of the air-conditioning units appeared to be damaged and that it had bid on replacing all the air-conditioning on the third floor, not merely the fire damage.

Defendant also claimed a fee of $3,678 for the architect who had drawn the plans but there is a question whether any new plans were needed in order to repair the fire damage. As pointed out in the district court's opinion, a 1960 plan showing the building as it existed before the fire was available. In addition, no explanation was given as to why any plans were needed for the fourth floor since the evidence is clear there was no significant fire damage on that floor.

■ Still another indication of fraud is the claim for rental loss. Despite the original claim for $12,000, a breakdown of which Stratton was unable to get, Winnick testified at the trial that the actual rent loss was $6,025 and that all but $750 of this amount had been paid subject to refund.

We are concerned here, of course, not merely with the question of whether excessive figures were submitted but also whether this was done wilfully. "Intent to defraud is not to be presumed and the trier of fact should make all reasonable allowance for lack of knowledge or sound judgment or for honest mistake on the part of the insured as well as for the tendency to believe that which is to one's own interest * * *." Gechijian, supra, 298 Mass. at 489, 11 N.E.2d 479. Milton, Winnick and Warren, however, were well apprised of the damage done to the building, the repairs required and the time it would take to make them. It is only reasonable, for example, that the district court would find that Winnick, the treasurer and also the building manager, was well aware of the amount of rental loss and that Warren and Milton, who inspected the building after the fire, would be aware that the amount of fire damage on the fourth floor was negligible. It should be noted that defendant's excessive claim of fourth floor damage is not explained by its admission that $7,320 had been improperly included. Quite apart from the question of whether fraud may have already been committed at that time, the subsequent breakdown of New England's $44,100 bid reveals that $17,200 was allocated to the fourth floor.

■ Nor can defendant derive any comfort from the fact that these mis-

3. The record of the proceedings before the referees was introduced in evidence without objection.

representations were made by Milton. It is well settled in Massachusetts that an agent's attempt to defraud is attributable to his principal, if the agent is acting within the scope of his authority. As stated in *Bockser v. Dorchester Mut. Fire Ins. Co.*, 327 Mass. 473, 478–479 99 N.E.2d 640, 642, 24 A.L.R.2d 1215 (1951):

> "Any other result would tend to circumvent the public policy which calls for the enforcement of the clause in the Massachusetts standard policy now before us. * * * All that would be necessary is a complete delegation by the insured of the responsibility for the adjustment of the loss to a third party whose acts might be disavowed * * *."

There is no doubt that Milton was acting within the scope of his authority all through the negotiations and proceedings here.

Finally, since it is clear that the findings of the district court on the question of fraud in no way interfered with the proper function of the referees, Rule 52(a) Fed.R.Civ.P. applies. From our examination of the record certainly the findings of the district court upon which the judgment is based cannot be said to be "clearly erroneous."

Affirmed.