**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,**
**Plaintiff**

v.

**Martin A. FRAIDOWITZ, Defendant**

**No. CIV.A. 02–30191MAP.**

United States District Court,
D. Massachusetts.

March 21, 2005.

---

Katherine Aertker Day, Egan, Flanagan & Cohen, PC, Edward J. McDonough, Jr., Egan, Flanagan & Cohen, PC, Springfield, MA, for Plaintiff.

Joel M. Sowalsky, Smith, Segel & Sowalsky, Boston, MA, for Defendant.

MEMORANDUM AND ORDER RE-GARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
(Docket No. 28)

PONSOR, District Judge.

## I. INTRODUCTION

The plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") is seeking a declaratory judgment to the effect that its policyholder, defendant Martin Fraidowitz, is not entitled to payments from a supplementary disability insurance policy, because of material misrepresentations he made on his application for this additional coverage.

MassMutual has now moved for summary judgment. For the following reasons the motion will be allowed.

## II. FACTUAL BACKGROUND

In July 1986, the defendant purchased a disability insurance policy from MassMutual. He had been an agent for MassMutual for a number of years, and he used himself as the broker/agent in purchasing this coverage. The policy provided for payments, in the event Fraidowitz became totally disabled, of $3,350 per month. Under the provisions of the policy, the insured was permitted to purchase additional benefits during defined option periods, provided he was not disabled at the time. During periods of disability the policy barred any purchase of additional coverage.

In February 2000, Fraidowitz submitted a claim for benefits, stating that because of chronic depression he was unable to perform the duties of his occupation. Based on information provided by defendant's health providers, MassMutual denied this application on May 24, 2000. Fraidowitz protested the rejection in letters to Mass-

Mutual on May 30 and June 1, 2000, asserting that he was totally disabled as defined in the policy.

On August 9, 2000, Fraidowitz submitted an application for additional benefits, exercising his right to do this during one of the policy's option periods. Question Six on the application for additional coverage asked "Are you currently disabled?"

This question obviously presented a problem, since as of August 2000 Fraidowitz was ardently insisting that he *was* in fact disabled—a fact which, if true, would prohibit him from seeking additional coverage. MassMutual, on the other hand, was at this time unpersuaded that Fraidowitz was disabled. Fraidowitz's attorney requested guidance from MassMutual on how his client should answer the question under these circumstances. According to defendant, the response he received was that his answers to all the question should be as accurate and honest as possible.

Fraidowitz eventually answered "No" to Question Six, but added a comment as follows:

The answer to # 6 is per the denial of my claim # 2000D0296. Notwithstanding my answer to # 6, I reserve my right to continue to challenge the denial of that claim, and my answer to # 6 shall not prejudice my rights in connection with that claim.

Affidavit of Martin Fraidowitz, Docket No. 34, at 6.

His application for additional benefits was approved and resulted in a doubling of his maximum monthly benefit amount to $6,700. Fraidowitz thereafter commenced to pay the new premium amount based on the additional coverage, but received no

benefit payments because MassMutual continued to contest his disability.

On November 3, 2000, MassMutual notified Fraidowitz that it was re-opening his claim, based on new medical reports, and on January 18, 2001, MassMutual approved his original application for benefits based on depression. The plaintiff accepted Fraidowitz's contention that he had been totally disabled as of February 9, 2000, the date of his original claim. Enclosed with the letter of approval was a check to Fraidowitz in the amount of $26,800, covering the period of May 9, 2000 [1] through January 8, 2001, comprising monthly benefits of $3,350 plus applicable cost of living adjustments.

Subsequently, Fraidowitz sought payment of interest on the amount paid on January 18, 2001, reimbursement of attorney's fees, a determination of January 25, 2000 as the date of his disability, and an adjustment of the benefit amount to $6,700 per month based on the additional coverage he purchased during the August 2000 option period. MassMutual denied all four claims.

MassMutual asserted that Fraidowitz was not entitled to interest because the payment was made in a reasonable time following the determination that he was disabled under the policy. Attorney's fees were also not warranted, according to MassMutual, because there was no right to benefits under the policy at the time that Fraidowitz retained counsel in July, 2000. With regard to the date of disability, MassMutual noted that under the policy an insured had to show that he was under the care of a physician who confirmed the existence of the disability. MassMutual set the date of February 9, 2000 as the

---

1. The 90–day waiting period under the policy expired on May 8, 2000, and benefits began accruing on May 9.

date of disability, because that was the earliest date on file of a doctor's finding that Fraidowitz was disabled. A January 25, 2000 doctor's report only stated that defendant "mentioned" symptoms of depression, without any confirmation of his disability. Finally, MassMutual denied the increased payments on the grounds that Fraidowitz was ineligible to purchase the additional benefits because he was disabled at the time he completed the form and misrepresented his answer to Question Six of the application.

Fraidowitz disagreed with MassMutual's decisions on all four issues and reserved his right to contest them further at a later time. In this litigation, however, the only issue that defendant continues to contest is the denial of the supplemental coverage and increased benefits under it. MassMutual continues to pay the defendant disability benefits based on the original policy.

### III. STANDARD OF REVIEW

A motion for summary judgment may be properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential to affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"Once the movant has served a properly supported motion asserting entitlement to summary judgment, the burden is on the nonmoving party to present evidence showing the existence of a trialworthy issue." *Gulf Coast Bank & Trust Co. v. Reder,* 355 F.3d 35, 39 (1st Cir.2004).

"[T]he district court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Pac. Ins. Co. v. Eaton Vance Mgmt.,* 369 F.3d 584, 588 (1st Cir.2004); *quoting Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995). "Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993) (quotations omitted), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

### IV. DISCUSSION

■ Mass. Gen. Laws ch. 175, § 186 permits an insurer to avoid a policy which has been obtained through, or with the aid of, a material misrepresentation by the insured, provided such misrepresentation is "made with actual intent to deceive, or . . . increased the risk of loss." In discussing the statute, the Massachusetts Supreme Judicial Court as early as 1917 underlined this requirement of either actual intent to deceive *or* increased risk.

> It is not enough under this statute to prevent recovery that there have been misrepresentations. It must also appear that either they were made with intent to deceive or that the falsities in them increased the risk of loss.

*McDonough v. Metropolitan Life Ins. Co.,* 228 Mass. 450, 452, 117 N.E. 836 (1917).

More recently, the First Circuit addressed the question of when a false statement may provide the grounds for voiding an insurance policy. The court recognized that under Massachusetts law a false answer in an insurance application "does not itself automatically prove deceitful intent" sufficient to relieve the insurer of the obli-

gation to pay benefits. Something more is required: either an "actual intent to deceive" or a misrepresentation that "increase[s] the risk of loss." *Boston Mutual Ins. Co. v. New York Islanders Hockey Club, L.P.*, 165 F.3d 93, 96 (1st Cir.1999).

█ In this case it is not necessary to explore the vexed question of whether Fraidowitz's answer to Question Six reflected deceitful intent as a matter of law for purposes of summary judgment. The efforts by the defendant's lawyer to discuss the question with MassMutual and the footnote to the answer raise obvious questions about the nature of the defendant's intent.

There is no conceivable doubt, however, that the answer to Question Six was, in fact, false. Fraidowitz knew, and consistently maintained, that he was actually disabled by depression at the time of his application for additional coverage, and both parties now agree about the existence of this disability at the time of the application was submitted. Thus, even reading Fraidowitz's response to Question Six in light of the footnote, there can be no question that his answer did constitute a misrepresentation. An honest answer to the question "Are you currently disabled?" at the time Fraidowitz was filling out the application was certainly *not* "No."

There can also be no doubt whatsoever that the false response to Question Six increased the plaintiff's risk of loss. Indeed, the false answer directly resulted in the issuance of a policy that doubled the insurer's exposure.

Given that no reasonable jury could possibly reach any other conclusion on this record but that Fraidowitz was responsible for a misrepresentation on his application for additional disability coverage, and that this misrepresentation manifestly subjected MassMutual to an increased risk, the plaintiff's Motion for Summary Judgment

must be allowed. The plaintiff is entitled to declaratory relief confirming that it is not obliged to make any payments to the defendant based upon the August, 2000 application for additional coverage.

Defendant's most attractive argument against this analysis is that the plaintiff should be hoisted on its own petard. As of August, 2000 MassMutual was stubbornly, and wrongheadedly, insisting that Fraidowitz was in fact not disabled. Fine, the defendant says, I proceeded accepting your assumption and made my application for additional benefits, you approved the application, and now you can live with the consequences of your own callousness and bad faith.

This argument is admittedly tempting, but in the end respect must be accorded to objective reality. The fact is the defendant was disabled at the time of his application, he knew it and he persistently sought to receive benefits for his disability. Nevertheless, in pursuit of his own advantage, he denied that he was suffering a disability. Without question, this misrepresentation increased the plaintiff's risk. MassMutual is entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons the plaintiff's Motion for Summary Judgment is hereby ALLOWED. The clerk will enter judgment for the plaintiff both on the complaint and the defendant's counterclaim. This case may now be closed.

It is So Ordered.