**ESPEDITO REALTY, LLC, Plaintiff**

v.

**NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Defendant.**

**C.A. No. 10–cv–30039–MAP.**

United States District Court, D. Massachusetts.

March 29, 2013.

Gen. Laws Ch. 93A, for failing to cover losses caused by water damage to its warehouse. Defendant moved for summary judgment (Dkt. No. 29) arguing that (1) the damage to the warehouse floors was caused by "earth movement," an excluded peril under the policy, and (2) any claim for coverage was barred based on Plaintiff's material misrepresentations. The court denied Defendant's motion as to the "earth movement" exclusion outright. *Espedito Realty v. Nat'l Fire Ins. Co. of Hartford,* 849 F.Supp.2d 179, 181–83 (D.Mass.2012). It denied without prejudice, however, the portion of the motion based on misrepresentation, permitting Defendant to file a renewed motion for summary judgment following additional discovery.

Now before the court is Defendant's renewed motion for summary judgment (Dkt. No. 43) arguing that the entire insurance policy is void because of Plaintiff's misrepresentations. For the reasons stated below, this renewed motion will be allowed.

Mark J. Albano Dalsey & Albano One, Springfield, MA, for Plaintiff.

Melissa M. D'Alelio, James S. Harrington, Jonathan D. Mutch, Robins, Kaplan, Miller & Ciresi LLP, Alexander G. Henlin, Edwards Wildman, Palmer LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR BREACH OF THE POLICY CONDITION PROHIBITING MISREPRESENTATION

### (Dkt. No. 43)

MICHAEL A. PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff has sued Defendant insurer for breach of contract and violation of Mass.

## II. FACTS

As Rule 56 requires, the facts and all reasonable inferences that might be drawn from them are viewed in the light most favorable to the non-moving party, here Plaintiff. *Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.,* 369 F.3d 584, 588 (1st Cir. 2004). The court has already laid out the basic underlying facts in its earlier memorandum and order, cited above. The facts related to Defendant's renewed motion, anchored on its contention that the policy is void because of Plaintiff's material misrepresentations, are as follows.

Plaintiff Espedito Realty, LLC, owned by Frank Daniele, possessed a warehouse

located at 49 Cadwell Drive in Springfield, Massachusetts. In March 2008, Plaintiff purchased through FSC Insurance Agency ("FSC") an insurance policy issued by Defendant National Fire Insurance Company of Hartford, an affiliate of CNA Insurance Company, to cover losses resulting from damage to the warehouse. The policy issued by Defendant to Plaintiff contained a condition that voided the policy in the event that the insured intentionally concealed or misrepresented a material fact concerning a claim made under the policy.[1] (Def.'s Second Am. Answer, Dkt. No. 27, Ex. 1 at 8.) Plaintiff used an FSC agent (hereinafter the "Agent") to broker this policy with Defendant.

Beginning in January 2007, Plaintiff rented space in its warehouse to the company Horizon Sheet Metal, Inc. ("Horizon"). Horizon used part of the first floor for its office and welding operation. By the terms of the lease signed between Plaintiff and Horizon, the monthly amount of rent due for the lease period between January 2007 and December 2007 was to be $3,166.66; the monthly amount due between January 2008 and December 2008 was to be $3,333.33; and the monthly payment between January 2009 and April 2010 was to be $3,416.66. (Dkt. No. 44, Ex. 1 at 157.) This lease was signed on February 6, 2007, by Mr. Daniele and the president of Horizon, Arthur Grodd. (Id. at 166.)

A little over seven months later, on September 28, 2007, Mr. Daniele and Mr. Grodd signed a lease modification, which increased the rent to $3500 for the period between October 2007 and December 2007;

$4000 for the period between January 2008 and December 2008; and $4100 for the period between January 2009 and December 2009. (Id. at 156.)

The evidence in the record shows that Horizon paid the $4000 a month rent due under the modification for January through May of 2008. (Id. at 218–19.) From June until November 2008, Horizon paid only $2500 a month. (Id. at 219–20.) On November 4, 2008, Horizon sent Plaintiff a letter declaring Horizon's intention to terminate the lease and to surrender the leased property to Plaintiff on January 2, 2009. (Id. at 137.) Nonetheless, Horizon stayed on as a tenant at will. In December 2008, Horizon began paying $3000 a month in rent, which it continued to pay through the first part of 2009.

On March 6, 2009, the water pipes in the warehouse broke, causing extensive damage to the building and to some of the property located in the building. The water damage was not discovered until March 9, 2009, by which time the water on the first floor had pooled several inches deep. Horizon moved its offices upstairs after the water break, kept its welding work in the open warehouse space, and for two months continued to pay $3000 per month. Beginning in June 2009, Horizon moved out of the office space upstairs and dropped its rental payment to $2000 because of the water damage in the building. Horizon thereafter remained as a tenant at will paying $2000 per month for a year. In July 2010, it agreed to pay an increased rent of $2300 per month.

---

1. The full text of the policy provision is as follows: This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

 a. This policy;
 b. The Covered Property;
 c. Your interest in the Covered Property; or
 d. A claim under this policy.
(Dkt. No. 31, Ex. 1 at 31.)

The claims made by Plaintiff under its insurance policy with Defendant were made through the FSC Agent. On March 11, 2009, the Agent reported the damage to Defendant on a property loss form. The initial loss reports were limited to the damage done to the walls and ceiling of the building. Defendant made two payments, in May and August of 2009, totaling over $10,000 to Plaintiff for those repairs. The parties' dispute over the buckling of the concrete floor and the "earth movement" exclusion began in June 2009.[2]

On July 29, 2009, the Agent sent an email to Defendant, copied to Plaintiff's owner, Mr. Daniele, inquiring into Plaintiff's claim for the damaged floor. In this communication the Agent stated that Plaintiff was "now losing rental income as a result" of the loss from the water break. (Dkt. No. 44, Ex. 1 at 147.) The Agent sent another email, again copied to Mr. Daniele, on August 5, 2009, reiterating the claim for lost rental income. On August 13, 2009, the Agent sent an email to Mr. Daniele asking for information on the rental income he was "losing as a result of the loss due to the tenant having to leave." (Id. at 151.) Later that same day, the Agent sent an email to Defendant falsely stating that the damages to Plaintiff included $4,150 per month in lost rent from the date of the water break due to the tenant leaving the premises after the incident. (Dkt. No. 44, Ex. 1 at 153.) On August 18, 2009, the Agent sent an email to Defendant with the paperwork needed to support Plaintiff's business income loss claim, misleadingly including only a copy of the September 2007 lease modification and the February 2007 original lease, but not the tenant's letter of November 2008 terminating the lease.

On August 21, 2009, the Agent responded to an email from John C. Taylor, Senior Client Services Manager for Defendant, in which Mr. Taylor summarized Plaintiff's claims as of that time. The second issue noted was Plaintiff's "$4000+" claim per month for lost rental income. (Dkt. No. 44, Ex. 1 at 44.) On August 26, 2009, the Agent sent another email to Defendant, stating that Horizon maintained some property in the warehouse but falsely claiming that Horizon had moved operations and was not paying rent. (Id. at 172.) On August 28, 2009, Defendant sent a check to Plaintiff for $16,400 as a "loss of rent advance payment." (Id., Ex. 2 at 20.) Defendant told Plaintiff that an accounting firm would contact Plaintiff later to calculate the exact amount of rental income loss.

In his deposition, Mr. Daniele stated that FSC Insurance was Plaintiff's agent and that he provided the Horizon lease and other documents to the FSC Agent to support his claim with Defendant. (Id. at 180–81.) Mr. Daniele also stated that in fact he knew that Horizon had never left the warehouse after the flood though it did reduce the amount of space it was using. (Id. at 183–84.) Moreover, Mr. Daniele admitted that though its rental payments decreased after a period, Horizon never stopped paying some amount of rent. (Id. at 185.)

### III. DISCUSSION

The court should grant summary judgment for the moving party where there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "A 'genuine' issue is one that could be re-

---

2. This dispute, the genesis of this lawsuit, is discussed in the court's earlier order. *Espedi-* *to Realty,* 849 F.Supp.2d at 181–83.

solved in favor of either party, and a 'material fact' is one that has the potential to affect the outcome of the case." *Massachusetts Mut. Life Ins. Co. v. Fraidowitz,* 360 F.Supp.2d 243, 246 (D.Mass.2005).

## A. Legal Standards

By its terms, the insurance policy issued by Defendant to Plaintiff is void if the insured intentionally conceals or misrepresents a material fact concerning a claim under the policy. (Dkt. No. 27, Def.'s Second Am. Answer, Ex. 1 at 8.) Such clauses are enforceable in Massachusetts. *Boston Mut. Ins. Co. v. New York Islanders Hockey Club, L.P.,* 165 F.3d 93, 96 (1st Cir.1999); *Yerardi v. Pac. Indem. Co.,* 436 F.Supp.2d 223 (D.Mass.2006); *Gechijian v. Richmond Ins. Co.,* 305 Mass. 132, 136, 25 N.E.2d 191 (1940) ("*Gechijian II* "). For the insurance policy to be voided, the insurance company must establish three things: (1) that a misrepresentation exists, (2) that it was material, and (3) that the insured acted intentionally in misrepresenting the material fact in the claim presented to the insurance company. *Yerardi,* 436 F.Supp.2d at 240. The burden of establishing these elements rests with the insurance company. *See Dadurian v. Underwriters at Lloyd's, London,* 787 F.2d 756, 762 (1st Cir.1986); *Gechijian II,* 305 Mass. at 136, 25 N.E.2d 191. Summary judgment in favor of an insurer offering the misrepresentation defense, though rare, may be appropriate where the evidence is clear.

On the first issue, whether a particular statement constituted a misrepresentation, jury consideration may be required. At trial, the insurer must persuade the jury that particular representations were, in fact, false and not merely ambiguous or unclear. In the summary judgment context, the insurer must convince the court that the undisputed facts permit only one

conclusion: that the statements at issue were misrepresentations. *Massachusetts Mut. Life Ins. Co.,* 360 F.Supp.2d at 246–47 (concluding that the insured's answer to a question on the application was false as a matter of law).

Resolution of the second issue, materiality, may again depend on the existence of disputed facts. It is well established that " 'if the facts misrepresented are so obviously important that reasonable minds cannot differ on the question of materiality,' then the issue becomes one of law for the judge." *Yerardi,* 436 F.Supp.2d at 240 (internal citation and quotation omitted). To be considered material, the misrepresentation need not be central to the insurance claim, or even be relied on by the insurance company. It is enough that the misrepresentation was "relevant to the insurance company's investigation of a claim." *Dadurian,* 787 F.2d at 759–60.

On the third and last element, the insurer must show that the misrepresentation was made with fraudulent intent. *Gechijian II,* 305 Mass. at 138, 25 N.E.2d 191. Even when it is clear that a misrepresentation was material, disputed facts regarding an insured's intent may make summary judgment inappropriate. "An innocent mistake or an accidental misrepresentation will not deprive the insured of the benefits of the policies." *Id.* In Massachusetts, intent to deceive is not presumed; it must be proven. *Rappe v. Metro. Life Ins. Co.,* 322 Mass. 438, 440, 77 N.E.2d 641 (1948). However, "fraudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge." *Fisch v. Bd. of Registration in Med.,* 437 Mass. 128, 139, 769 N.E.2d 1221 (2002). The insurance company does not need to show that the insured intended to defraud the company

out of more than the actual loss; the policy will be voided if the insured intentionally furnished false information to the insurance company if only for the purpose of gaining a more advantageous position in settling the claim. *Gechijian v. Richmond Ins. Co.*, 298 Mass. 487, 488–89, 11 N.E.2d 478 (1937) (*"Gechijian I "*); *Gechijian II*, 305 Mass. at 136, 25 N.E.2d 191 (stating that providing the insurance company with information that the insured knew to be false "is a fraudulent design which constitutes an attempt to defraud within the provisions of the standard policies and vitiates such contracts of insurance even though the insured may not have intended to secure more than his actual loss").

▉ In weighing whether the misrepresentation defense bars coverage, courts are obliged to bear in mind that the misrepresentations of an insured's agent are attributable to the insured. "It is well settled in Massachusetts that an agent's attempt to defraud is attributable to his principal, if the agent is acting with the scope of his authority." *Harold J. Warren, Inc. v. Federal Mut. Ins. Co.*, 386 F.2d 579, 582 (1967); *Bockser v. Dorchester Mut. Fire Ins. Co.*, 327 Mass. 473, 99 N.E.2d 640 (1951). Any other rule would facilitate the circumvention of policy provisions by permitting the insured to completely delegate the claims process to "a third party whose acts might be disavowed." *See Bockser*, 327 Mass. at 479, 99 N.E.2d 640.

## B. *Analysis*

▉ The record contains almost no dispute as to actual facts.[3] As will be seen, it cannot, on the record before the court, fairly be disputed that Plaintiff's agent made misrepresentations, or that these misrepresentations related to material facts. Plaintiff's main line of defense rests on the third element. Plaintiff contends that the question of whether the material misrepresentations were *intentional* requires jury consideration. The argument is resourceful but unpersuasive.

To start with the first element, there can be no doubt that several misrepresentations were made to Defendant regarding the status of Horizon as Plaintiff's tenant. The Agent told Defendant that Plaintiff's tenant, Horizon, had vacated the warehouse and was no longer paying rent after the damage from the water. This was flatly false. The Agent also falsely told Defendant that the monthly rent had been around $4100 per month. In support of this assertion, the Agent sent copies of the original lease and the amendment, which he obtained from Plaintiff. Significantly, however, the Agent failed to disclose Horizon's November 4, 2008, letter of recision. As Mr. Daniele acknowledged in his deposition, Horizon never left the warehouse and, though the rental amount was reduced, never missed a single payment.

On the second element, Plaintiff offers the argument that these misrepresentations were not material because, even with the correct information, Defendant would have had to compensate Plaintiff, to some extent, for the reduction in rent paid by Horizon. Plaintiff points out that Defendant gave Plaintiff a check for an *estimated* loss of the rental income with the inten-

---

3. Plaintiff argues that the court cannot rely on the statements in the emails between Defendant and the Agent because Defendant has not authenticated the emails, and many of the statements constitute hearsay. This argument lacks force for two reasons. First, the emails fall within the business records exception. Fed.R.Evid. 803(6)(B). Second, the emails are not offered to prove the truth of the matters asserted in them, but only to show that the communications occurred. Indeed, Defendant contends that the emails were in fact untrue.

tion of calculating the exact amount later. Plaintiff further contends that, even using the correct, lower rental rate ($2000 not $4000), given the amount of time that had passed without the floor being repaired, Defendant would still have been on the hook for the full $16,000 advanced to Plaintiff for lost business income.

Plaintiff's argument is a good effort but does not stand up. Horizon's occupation of the premises as a tenant and its true monthly rental obligation were clearly material facts. They bear directly on Plaintiff's claim for lost business income. Even if Plaintiff did not intend ultimately to secure more than it was due under the policy, the law is clear that the misrepresentations themselves were material. *Gechijian II*, 305 Mass. at 136, 25 N.E.2d 191. The conclusion that Plaintiff's misrepresentations were material is unavoidable as a matter of law. *See Yerardi*, 436 F.Supp.2d at 240.

As noted above, Plaintiff's strongest argument focuses on the issue of the Agent's intent in making the material representations. It is true that if a misrepresentation is only an innocent or accidental mistake, then the contract will not be void. *Gechijian II*, 305 Mass. at 139, 25 N.E.2d 191; *Harold J. Warren, Inc.*, 386 F.2d at 581. Even where a misrepresentation is made with reckless disregard for the truth, Massachusetts courts will not impute actual deceit as a matter of law. *Boston Mut. Ins. Co.*, 165 F.3d at 96–7 (discussing a spectrum of scenarios where deceitful intent may be demonstrated). Because of this, as Plaintiff points out, the question of intent to defraud usually requires an assessment of inferences and credibility for the jury to decide. *See Dadurian*, 787 F.2d at 762; *Yerardi*, 436 F.Supp.2d at 241.

The problem for Plaintiff here is that, even in the face of these authorities, the factual record before the court is so clear that summary judgment is compelled. Under Massachusetts law "fraudulent intent may be shown by proof that a party knowingly made a false statement and that the subject of that statement was susceptible of actual knowledge." *Fisch*, 437 Mass. at 139, 769 N.E.2d 1221; *Yerardi*, 436 F.Supp.2d at 240; *cf. Harold J. Warren, Inc.*, 386 F.2d at 581. The facts of record make it clear that the communications by the Agent to Defendant, known to Plaintiff, did not reflect merely "reckless" disregard for the truth but knowing falsehood.

First, Defendant was told by Plaintiff through its Agent that Horizon had left the warehouse and was no longer paying rent. Both these representation were false, and both of these representations were "susceptible of actual knowledge." *See Fisch*, 437 Mass. at 139, 769 N.E.2d 1221. This was not a question of valuing losses, of which reasonable minds might differ. *E.g., Gechijian II*, 305 Mass. at 139, 25 N.E.2d 191. Neither was it a question of credibility, where one witness was disputing another. *E.g., Dadurian*, 787 F.2d at 762; *Yerardi*, 436 F.Supp.2d at 240. There is no dispute. Plaintiff's owner, Mr. Daniele, testified under oath at his deposition that he knew Horizon had never vacated its tenancy and had never skipped a rental payment. (Dkt. No. 44, Ex. 1 at 183–84 & 185.) These were facts both capable of actual knowledge and actually known to Plaintiff, and they were misrepresented to Defendant. The misrepresentations certainly were not innocent slips, and they cannot be characterized as merely reckless. They were flat-out falsehoods.

Second, the false statements to Defendant were made repeatedly and over an extended period of time. On August 13, 2009, the Agent sent an email to Defendant regarding the lost rental income, in

which Defendant was told that the loss of rental income amounted to "$4,150.00 per month until present as the tenant has left due to the loss." (Dkt. No. 44, Ex. 1 at 153.) This misrepresentation was repeated over three additional emails extending through a period of two weeks, as the Agent sought a resolution of Plaintiff's claim for lost business income under the policy. Moreover, these falsehoods were forwarded to Plaintiff's owner, Mr. Daniele, who admitted that he knew they were false.

In addition, in support of Plaintiff's claim, on August 24, 2009, the Agent sent Defendant copies of the original lease and lease modification that falsely depicted Horizon's rental obligation as $4100 per month for the 2009 calendar year. It is undisputed that these documents were provided to the Agent by Plaintiff's owner, with the knowledge that they would be forwarded to Defendant. (*Id.* at 180.) As noted above, what was not provided to Defendant, either by the Agent or by Plaintiff, was Horizon's November 2008 letter terminating the lease four months prior to the pipe rupture and resulting water damage.

Finally, the evidence in the record shows that Horizon had not paid more than $4000 per month on its lease since May of 2008—a full ten months before the water damage. (*Id.* at 219.) In the three months preceding the water damage, Horizon had paid $3000 per month in rent. Horizon did not drop its rental payments due to the water damage until June 2009 and, even then continued paying $2000 per month in rent. Defendant was told that Plaintiff was sustaining loss income amounts of $4100 per month since the date of the water damage incident, when in fact Plaintiff had *no* loss of business income for almost three full months after the incident and then only a $1000 loss per month starting in June.

No reasonable factfinder confronting this record could conclude that this series of falsehoods constituted merely an innocent misstatement or reckless communication. The First Circuit's decision in *Dadurian v. Underwriters at Lloyd's, London* does not assist Plaintiff. 787 F.2d 756 (1st Cir.1986). That case involved a straightforward issue of credibility. No such issue can be found in the record now before the court.

As the SJC has stated;

[a] valuation may be so exaggerated and excessive as to constitute a deliberate and wilful overvaluation; and its use to influence the judgment of another who was under an obligation to pay in accordance with actual value would necessarily imply an intent to deceive as the natural and proximate consequence of such conduct.

*Gechijian II*, 305 Mass. at 137, 25 N.E.2d 191. The case falls squarely within the SJC's holding.

 Insurance policies set forth the terms of the relationship between the company and the insured in which "they shall cooperate in complete honesty and fairness to ascertain the essential facts—the facts of value and of loss—in accord with the truth," because the insurance company is bound by the terms of the policy to pay the losses of the insured. *Gechijian I*, 298 Mass. at 489, 11 N.E.2d 478; *Harold J. Warren, Inc.*, 386 F.2d at 580. The policy does not contemplate a relationship wherein the parties haggle for best advantage: the insurer is bound to pay the loss and the insured is bound to report the loss honestly. *Id.* Thus, where an insured intentionally misrepresents the loss suffered, whether in pursuing a payment he is not entitled to, trying to obtain a faster resolu-

tion of his claim, or seeking an advantage in negotiations, the policy is void.

It is true that the First Circuit counsels caution in "direct[ing] a verdict for the party having the burden of proof." *Dadurian*, 787 F.2d at 762. This factual scenario, however, presents a relatively rare instance where Defendant, who does bear the burden here, is entitled to judgment as a matter of law. The undisputed evidence compels the court to conclude that Defendant has met its burden in establishing that Plaintiff intentionally made material misrepresentations in its claim for loss of business income under the policy. The policy is therefore void. Defendant is entitled to summary judgment. *See Jenkins v. Aetna Life Ins. & Annuity Co.*, 1996 WL 617264, at *5 (D.Mass. Aug. 14, 1996) (Saris, J.) (granting summary judgment for the insurer after determining that the "undisputed evidence [ ] demonstrates deceptive intent by the insured").

## IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 43) is hereby ALLOWED. This case may now be closed.

It is So Ordered.